616 A.2d 170

**BUCKS COUNTY CHILDREN AND YOUTH SOCIAL SERVICES AGENCY, Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 16, 1992.

Decided Oct. 6, 1992.

112

Brad M. Jackman, for appellant.

Myra Werrin Sacks, Asst. Counsel, for respondent.

Harry S. Rosenthal, for intervenor, B.F.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

Bucks County Children and Youth Social Services Agency (Bucks County CYS) appeals from an order of the Office of Hearings and Appeals accepting a hearing officer's recommendations and granting the expungement of an indicated report of child sexual abuse against the child's mother issued pursu-

ant to the Child Protective Services Law (the Law), Act of December 19, 1990, P.L. 1240, *as amended,* 23 Pa.C.S. §§ 6301–6384.

On June 9, 1983, Bucks County CYS instituted an investigation into allegations of the suspected child abuse of an eleven year old female child, J.F. Based on the interviews conducted by the social worker Beth Kilburn Moran (Moran), an indicated report of child abuse was filed, identifying the child's mother, B.F., and her paramour, J.W., as perpetrators of the abuse. As a result of the allegations, J.W. pled guilty to criminal charges of sexual abuse. B.F. was never criminally charged. The Secretary of the Department of Public Welfare (the Department) denied B.F.'s request that the information contained in the Statewide Central Register of Child Abuse be expunged. B.F. appealed and a hearing was held on October 31, 1990, seven years after the report was filed.

Beth Kilburn Moran testified that she initially interviewed J.F. and B.F. on June 22, 1983, and J.F. told her that J.W. attempted anal intercourse with her while her mother was in the hospital having a baby but she never related the incident to her mother. Moran also stated that B.F. recounted an incident in which she, J.F. and J.W. were in bed together and J.W. said: "[l]et's show J.F. where Mr. Microphone goes." (Notes of Testimony [N.T.], 10/31/90, p. 28.) Moran said that on a later visit, B.F. told her that J.W. was a tyrant and had control over the entire household. Moran opined that, based on her investigation, B.F. was aware of some inappropriate sexual behavior by J.W. toward J.F. and that B.F. was a perpetrator by omission because she did not do everything she could to protect the child. (N.T., 10/31/90, p. 41.)

At the time of the hearing J.F. was nineteen years old, married and herself a mother.[1] She testified that J.W. attempted to kiss her on several occasions, made her take a shower in front of him, walked around the apartment naked, referred to his penis as Mr. Microphone, frequently grabbed her breasts and was physically abusive. (N.T., 10/31/90, pp. 87–89.) However, J.F. never discussed the incidents with her

1. In the transcript of the hearing J.F. is identified as J.G.

mother and she did not think her mother knew of J.W.'s abusive behavior toward her. (N.T., 10/31/90, p. 94.) J.F. testified that while her mother was in the hospital, J.W. made her sleep with him and attempted anal intercourse. (N.T., 10/31/90, p. 97.) J.F. testified that on one occasion, J.W. struck her and knocked out a tooth. B.F. was not present at the time but when J.F. told her her mouth was bleeding, B.F. told her to "shut up" and took her to the dentist. (N.T., 10/31/90, p. 96.) On cross-examination, J.F. stated that, with regard to the incident in which she, her mother and J.W. were in the same bed, she was watching the only television in the apartment and was unaware of what her mother and J.W. were doing because she did not turn around. (N.T., 10/31/90, p. 109.) J.F. testified that J.W. threatened and struck her mother and on one occasion he threatened to throw her out the window. (N.T., 10/31/90, p. 111.) She also recalled only one incident in which J.W. was undressed while her mother was in the apartment. (N.T., 10/31/90, p. 110.)

B.F. testified that she was unaware that J.W. had ever done anything sexually inappropriate with J.F. until she received the inquiry from Moran. (N.T., 10/31/90, p. 150.) B.F. remembered only one incident in which J.W. walked around the apartment naked and she told him to wear a bathrobe. B.F. recalled an incident in which J.W. entered the apartment, threw her luggage and clothes out the window and pounded her head on the floor. (N.T., 10/31/90, p. 145.) She stated that J.W. was not invited into her home after January 24, 1983, though he often broke into the apartment and B.F. claimed that when Moran advised her that J.W. should stay somewhere else, he was already out of the apartment. (N.T., 10/31/90, p. 170.)

The Hearing Officer concluded:

After careful review of the testimony and evidence presented in this case, this Hearing Officer concludes the indicated report of child abuse listing B.F. as perpetrator should be expunged while the report listing J.W. as perpetrator should remain. The testimony of Ms. Moran and Detective Moran indicates that the appellant may or should have had

knowledge that J.W. had inappropriate propensities toward J.F. However, no evidence was presented to show that the appellant had any direct knowledge that J.W. had sexually abused or was going to sexually abuse J.F. Specifically, the testimony of J.F. herself indicated that she did not tell her mother of any incidents with Mr. W. and as far as she knew, her mother was not present to observe any act of sexual abuse by Mr. W. In addition, B.F. has specifically denied any knowledge of sexual abuse by Mr. W. until several days before being contacted by the CPS Agency. The Department has failed to present substantial evidence that B.F. had such knowledge and, as such, that she is the perpetrator of sexual abuse by omission. Therefore, it is recommended that the appeal of the appellant be sustained and the Indicated Report of Child Abuse listing B.F. as perpetrator be expunged.

(Recommendation of Hearing Officer, 4/25/91, p. 6.) The Office of Hearing and Appeals adopted the recommendation and the report was ordered expunged.

Child abuse is defined under the Law as "[s]erious physical or mental injury . . ., sexual abuse, . . . of a child under 18 years of age if the injury, abuse or neglect has been caused by the acts *or omissions* of the child's parents. . . . 23 Pa.C.S. § 6303 (emphasis added). When a CYS agency completes its initial investigation into a report of suspected child abuse, an indicated report is filed if there is substantial evidence of abuse based on one of the following:

(1) Available medical evidence.

(2) The child protective service investigation.

(3) An admission of the acts of abuse by the parent of the child or person responsible for the welfare of the child.

23 Pa.C.S. § 6303.

When an indicated report is filed, the appropriate information is entered in the Statewide Central Register of Child Abuse and notice is provided to the subjects of the report together with an explanation of the implications of the entry. 23 Pa.C.S. § 6338(a). The expungement of all information which identifies the subjects of an *indicated* report is mandat-

ed when the subject child reaches eighteen (18) *unless* "another report is received involving the same child, his sibling or offspring, or another child in the care of the persons responsible for the subject child's welfare. The identifying information may then be maintained in the register for five years after the subsequent case or report is closed." 23 Pa.C.S. § 6338(b). At oral argument, this Court asked the parties why expungement should not be automatic since the subject child J.F. was nineteen years old at the time of the hearing. The parties provided the Court with stipulations that the report would be expunged in May 1994 because another report had been filed regarding J.F.'s sibling.

 The subject of a report may at any time request the Department to expunge the information contained in the Central Register and has a right to a hearing regarding the accuracy or maintenance of the report if expungement is denied. 23 Pa.C.S. § 6341. Bucks County CYS has the burden of establishing by substantial evidence that an indicated report of child abuse is accurate and if the agency fails to sustain that burden the request for expungement will be granted. 23 Pa.C.S. § 6341(c); *Dauphin County Social Services v. Department of Public Welfare,* 117 Pa.Commonwealth Ct. 305, 543 A.2d 607 (1988).

 Our scope of review in expungement proceedings is limited to determining whether the Department's determination violates constitutional rights, is in accordance with the law or whether the findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Dauphin County Social Services.*

Bucks County CYS argues that B.F. failed to protect J.F. and placed her in the care of J.W. in spite of the fact that she knew or should have known that J.W. had propensities toward inappropriate sexual conduct with the victim. Bucks County CYS also alleges that the hearing officer erroneously adopted a standard whereby an individual must possess direct knowledge of abuse to be considered a perpetrator by omission. We considered the issue of child abuse caused by the omissions of

a parent in *K.S. v. Department of Public Welfare*, 129 Pa.Commonwealth Ct. 31, 564 A.2d 561 (1989). In *K.S.*, a mother alleged that extensive, unexplained injuries to her child (which included a bleeding one-half inch laceration under his tongue, anemia, two fractured tibias, skin lesions on his hands and feet and bruises to both feet) may have been caused by one of five other persons who occasionally watched the child. The Office of Hearings and Appeals rejected the recommendation of the hearing officer and denied the mother's request to expunge an indicated report of child abuse and concluded that the injuries were caused by omissions of the mother. We said that whether K.S. personally committed child abuse was not conclusive but because J.S. sustained severe physical injuries while K.S. was primary caregiver "K.S.' *omissions* ( . . . failure to protect or leave the child in the hands of a responsible caretaker) alone fulfill the definitions of both 'child abuse' and 'perpetrator'. . . ." *Id.* at 37, 564 A.2d at 564 (emphasis in original).

■ In this case, the injuries to J.F. were not readily discernible as were the physical injuries in *K.S.* All parties agree that J.F. was sexually violated by J.W. even though no medical evidence was presented; therefore, the only question before us is what role, if any, did B.F. play in the abuse of her child. Could B.F. be expected to know that J.F. was victimized by J.W. if the incidents occurred while she was out of the apartment and if J.F. did not relate her fears to her mother? On the other hand, considering B.F.'s personal experiences with J.W., one must ask whether a reasonable person would place her eleven year old child in the hands of such a caretaker while she was in the hospital. What B.F. knew or should have known is a question of fact to be resolved by the Department or its designee, the Office of Hearings and Appeals, based on conclusions as to credibility of witnesses and determinations of the weight to be assigned to the evidence. *Children and Youth Services Division v. Department of Public Welfare*, 103 Pa.Commonwealth Ct. 616, 520 A.2d 1246 (1987); *K.S. v. Department of Public Welfare*.

118

 The hearing officer found that B.F. specifically denied any knowledge of sexual abuse by J.W. until several days before being contacted by CYS. He also credited J.F.'s testimony that she did not remember ever seeing J.W. and her mother having sexual intercourse, that her mother was not present to observe any act of sexual abuse by J.W. and that J.F. never informed her of the incidents. But, the hearing officer also found that the testimony of Ms. Moran and Detective Moran indicated that B.F. "may or should have had knowledge that J.W. had inappropriate propensities toward J.F.". (Recommendations of the Hearing Officer, 4/25/91, p. 6.) Our review of the record convinces us that there is substantial evidence to support either view. It is the job of the fact finder to resolve conflicts in testimony and make *specific findings of fact* to apprise this Court of the legal and factual bases for his conclusions. The hearing officer failed to perform that function in this case. The hearing officer may have been persuaded by the fact that the hearing took place seven years after the conclusion of the investigation when the victim was nineteen years old but he failed to tell us and it is beyond our scope of review to assess the credibility of witnesses.

 We think the appropriate standard to use to determine whether a parent or caretaker is a perpetrator by omission is whether a reasonable person in the position of the caretaker, *knew or should have known* that acts of abuse were occurring and the parent or caretaker failed to take steps to remove the child from harm's way. It was for the fact finder to determine whether B.F. acted reasonably under the circumstances and whether other evidence weighed in favor of expunging the record. Because the hearing officer failed to resolve the factual issues before him by making specific findings of fact, we must remand for reconsideration of the testimony consistent with this opinion.

## ORDER

NOW, October 6, 1992, the order of the Department of Public Welfare, dated September 4, 1991, in the above-cap-

tioned matter is vacated and the case is remanded for specific findings on whether B.F. reasonably should have known that her daughter was subjected to acts of abuse.

Jurisdiction relinquished