**L.S., Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2003.

Decided July 15, 2003.

Charles Memolo, Clarks Summit, for petitioner.

Mary C. Walsh, Philadelphia, for respondent.

Before FRIEDMAN, J., SIMPSON, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

L.S. (Petitioner) petitions for review of the July 15, 2002, order of the Department of Public Welfare (DPW), which reconsidered and set aside an April 9, 2002, order

granting expungement of Petitioner's name from the ChildLine Registry. We reverse.

Petitioner was employed by Children's Ark Christian Center (ARK) as a child daycare staff person. On August 11, 2000, Petitioner was supervising children in a room that included J.M., I.L., the subject child, and S.L., I.L.'s sister. (Secretary's Final Order on the Merits.) Petitioner was occupied with writing a letter when J.M. assaulted I.L. S.L. pushed J.M. off of I.L., and a teacher from another room removed J.M. to the hallway. (*Id.*)

The Luzerne County Children and Youth Services (CYS) investigated the incident, and, on November 22, 2000, filed an indicated[1] report of child abuse pursuant to section 6303(b) of the Child Protective Services Law (Law).[2] CYS determined that Petitioner committed child abuse by omission during her supervision of the room, noting that the ARK staff was aware that J.M. was previously diagnosed with a psychological disorder and had a history of assaulting I.L. (*Id.*)

Petitioner requested that CYS expunge her name from the ChildLine Registry. On July 6, 2001, CYS granted Petitioner's request for expungement on the basis that insufficient evidence existed to confirm that Petitioner's failure to supervise was responsible for child abuse. I.L.'s parents appealed to DPW from the grant of the expungement, and a hearing was held before an Attorney Examiner for DPW.

At the hearing, the Attorney Examiner heard testimony from Wilma Snopek (Sno-pek), CYS' investigating caseworker. Snopek stated that she interviewed I.L. and S.L., during which I.L. told her that he was playing with blocks when J.M. attacked him and that S.L. pulled J.M. off of him. According to Snopek, I.L. stated that Petitioner was the only teacher in the room. Snopek further testified that, during her investigation, she discovered that J.M. had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), was on medication and had been involved previously in an incident with I.L. Based on her investigation, Snopek concluded that Petitioner was the perpetrator of child abuse because she did not properly supervise the room.

S.L. also testified before the Attorney Examiner and stated that Petitioner was near the front of the room writing a letter when J.M. began to attack I.L. S.L. stated that she pushed J.M. off of I.L. and that another teacher, sweeping just outside the doorway, entered the room and took J.M. into the hallway. S.L. could not recall what Petitioner did immediately after I.L. cried out in pain and did not know if Petitioner assisted I.L. after the attack.

During his testimony, I.L. confirmed that J.M. attacked him with blocks. I.L. recalled S.L. telling J.M. to stop hitting I.L., and I.L. remembered a teacher taking him to get ice after the altercation. I.L. did not remember which teacher was assigned to his classroom on the day of the incident.

Following the hearing, the Attorney Examiner concluded that DPW failed to

---

1. An "indicated report" is defined as a "child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following: (1) Available medical evidence. (2) The child protective service investigation. (3) An admission of

the acts of abuse by the perpetrator." 23 Pa.C.S. § 6303(a).

2. 23 Pa.C.S. § 6303(b). The term "child abuse" includes "[a]ny recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age." *Id.*

prove that Petitioner's lack of supervision caused I.L.'s injuries. The Attorney Examiner recommended that the appeal be denied and that Petitioner's name be expunged from the ChildLine Registry; DPW adopted the recommendation. I.L.'s parents petitioned for reconsideration, which DPW granted. By order dated July 15, 2002, the Secretary set aside DPW's order, concluding that CYS presented substantial evidence that Petitioner knew or should have known that J.M. posed a significant risk to I.L.'s safety because of J.M.'s psychological history and his earlier assault on I.L. and that Petitioner failed to take any protective measures. Petitioner now petitions this court for review.[3]

Petitioner first argues that the Secretary erred in relying on hearsay testimony, specifically Snopek's statement from her interview with I.L. and S.L., to find that Petitioner committed child abuse by failure to act. Additionally, Petitioner asserts that the Secretary's decision on reconsideration to maintain the indicated report of child abuse is not supported by substantial evidence.

■ In an administrative agency proceeding to expunge a name from the ChildLine Registry, the agency may consider hearsay testimony as substantial evidence if that testimony is corroborated. *Bucks County Children and Youth Social Services Agency v. Department of Public Welfare*, 808 A.2d 990 (Pa.Cmwlth.2002). Accordingly, a child victim's hearsay testimony may be admitted through the testimony of the child's family or investigating professionals if the time, content and circumstances under which the statements were made provide sufficient indicia of reliability. *Mortimore v. Department of*

*Public Welfare*, 697 A.2d 1031 (Pa.Cmwlth. 1997).

In this case, the Attorney Examiner refused to allow Snopek to testify regarding I.L.'s statements to her until the attorneys questioned Snopek about the circumstances surrounding her interview with I.L. Based on Snopek's responses, the Attorney Examiner determined that there was sufficient indicia of reliability of those statements, and the Attorney Examiner found Snopek's testimony to be relevant and credible. Moreover, because Snopek's hearsay testimony was corroborated by I.L.'s and S.L.'s direct testimony, it could be relied on by the Secretary in making a ruling. Accordingly, Petitioner's first argument is without merit. We now turn to the question of whether substantial evidence exists to support the Secretary's findings.

■ The proper inquiry into whether an indicated report of child abuse should be expunged or maintained is whether the report is accurate. *K.J. v. Department of Public Welfare*, 767 A.2d 609 (Pa.Cmwlth.), *appeal denied*, 567 Pa. 750, 788 A.2d 381 (2001). The county agency bears the burden of proof in an expungement case, and, to discharge this burden, must present evidence that outweighs any contrary evidence that petitioner's actions constituted child abuse. *York County Children and Youth Services v. Department of Public Welfare*, 668 A.2d 185 (Pa.Cmwlth.1995). In fact, we have defined substantial evidence needed to maintain an indicated report of child abuse as "evidence which so preponderates in favor of a conclusion that it outweighs, in the mind of the factfinder, any inconsistent evidence and reasonable

---

**3.** Our scope of review is limited to determining whether legal error has been committed, whether constitutional rights have been violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

inferences drawn therefrom." *R.P. v. Department of Public Welfare*, 820 A.2d 882, 885 (Pa.Cmwlth.2003) (citing *E.D. v. Department of Public Welfare*, 719 A.2d 384, 387 (Pa.Cmwlth.1998)). After a review of the record, we cannot conclude that substantial evidence exists to support the indicated report of child abuse here.

Although there is no dispute that I.L. was attacked by J.M., we disagree with the Secretary that DPW met its burden of establishing that Petitioner committed child abuse by failure to act. In fact, DPW presented no evidence in that regard. Moreover, we cannot determine if Petitioner acted *improperly* during the course of events. I.L.'s and S.L.'s testimony indicates only that Petitioner was in the room; we have no way of knowing what Petitioner did during and after J.M.'s attack on I.L. without impermissibly speculating over the evidence.[4]

The Secretary determined that, because the *ARK staff* knew of J.M.'s psychological disorder and history of assaulting I.L., *Petitioner* knew or should have known of the significant risk posed by J.M. and failed to take protective measures. We find no evidence in the record to support the Secretary's assumption that Petitioner had actual knowledge of J.M.'s behavioral background; moreover, it is not certain whether Petitioner, a staff worker, would have possessed the authority to make an administrative decision regarding J.M.'s isolation.[5]

We do not condone acts of child abuse against the children of this Commonwealth; however we also must not act with indifference to the gravity of child abuse allegations against a named perpetrator. Here, no substantial evidence exists to support the indicated report of child abuse against Petitioner, and, accordingly, we reverse.

## ORDER

AND NOW, this 15th day of July, 2003, the order of the Department of Public Welfare, dated July 15, 2002, is hereby reversed.

4. For instance, we could envision a scenario in which J.M. attacked I.L. while Petitioner sat passively near the front of the room writing a letter and did not react when she heard I.L.'s cries. Alternatively, because I.L. and J.M. were located at the back of the room and Petitioner was located near the front of the room, Petitioner may have responded immediately when she heard I.L. cry out, but could not reach him before S.L., who was located in the middle of the room, or before the assisting teacher, who was sweeping right outside the doorway just before the attack. DPW presented no evidence to assist the court in gauging, for example, the room's dimensions and floorplan, nor did DPW present the staff member who ran into the room from the hallway, which could have assisted the court in determining Petitioner's whereabouts immediately after the attack. Finally, there is absolutely no evidence that any different action by Petitioner would have prevented the attack.

5. Snopek discovered during her investigation that J.M. had previously bitten I.L. before the August 2000 attack; however, Snopek did not know which daycare workers were present during the incident. Snopek further stated that, while Petitioner was assigned to supervise the children in the room, she did not know if Petitioner would have had knowledge of each child's history or the authority to isolate ADHD children in a special class. If Petitioner simply was following instructions regarding the supervision of J.M. and I.L. in the same room, then perhaps liability properly rests with ARK. The issue of ARK's liability, however, is not before this court.