v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 8, 2012.

Decided July 13, 2012.

Richard S. McEwen, Edinboro, for petitioner.

Mary P. Patterson, Senior Counsel, Harrisburg, for respondent.

Stephen E. Hall, Meadville, for intervenor Crawford County Children and Youth Services.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY President Judge PELLEGRINI.

T.T. petitions for review of the Final Order of the Secretary of the Department of Public Welfare (Department) upholding an order entered by the Bureau of Hearings and Appeals (Bureau) denying his request to expunge an indicated report of child abuse filed by Crawford County Children and Youth Services (CYS) for abusing his stepdaughter, A.B. Because we recently adopted the clear and convincing evidence standard to maintain statutorily-designated information from an indicated report on the ChildLine Registry in *G.V. v. Department of Public Welfare,* —— A.3d —— (Pa.Cmwlth.2012), we vacate and remand this case to the Department for further proceedings consistent with this Opinion.

A.B. is a female child born to D.B. and R.T. on December 4, 1988. T.T. married R.T. and began residing with her and A.B. in 1994. On March 3, 2009, CYS received an oral report alleging that T.T. sexually abused A.B. between the years 2000 and 2007.[1] CYS conducted an interview of A.B. on April 24, 2009, during which she stated that T.T. abused her from the time she was 12 years old until she was 16 or 17 years old. After its investigation, CYS, pursuant to the Child Protective Services Law (Law),[2] filed an indicated report of child abuse[3] naming T.T. as the perpetrator. T.T. requested that the indicated report be expunged and filed a request for an administrative hearing.

Before the ALJ, A.B. testified that T.T. took her out alone on back roads on several occasions to teach her how to drive when she was between 12 and 16 years old. She testified that the first incident of abuse occurred when she was driving and T.T. instructed her to pull the vehicle over to the side of the road. After T.T. and A.B. exited the vehicle, T.T. grabbed A.B.'s hand and placed it on his penis. A.B. testified that it was common for T.T. to lift up her shirt and touch her breasts with his hands and mouth during these driving lessons, at home, and at T.T.'s car dealership. She further testified that in the summer of 2006, T.T. pulled down her bathing suit and placed his mouth on her vagina. A.B. also stated that when she needed money, T.T. would put money down the front of her shirt and into her bra. A.B. testified that when she was 15 years old, after an argument with T.T., she told her mother that she hated T.T. and would tell her why after she turned 18 and moved out of the house.

Laura Tunstall (Tunstall), a CYS caseworker, testified that she received a report of suspected abuse with regard to A.B. on March 3, 2009. She stated that she investigated the matter and that A.B. was interviewed at CYS by a forensic interviewer on April 24, 2009. Tunstall testified that she also interviewed T.T. and R.T. and conferred with Trooper Brian Ford of the Pennsylvania State Police during her investigation. She testified that T.T. denied most of A.B.'s allegations during the interview but admitted to smacking A.B.'s buttocks and putting money down her shirt as a joke. Tunstall testified that R.T. corroborated those statements when she was interviewed. On cross-examination, Tunstall explained that she had difficulty contacting A.B. to schedule an interview with her, but that the investigation was initiated within 24 hours of CYS's receipt of the report when an on-call worker telephoned A.B.'s family and spoke with them.

Testifying on behalf of T.T. were his two sons, his wife, R.T., and a family friend, R.K. T.T.'s sons testified that they never witnessed any inappropriate contact between T.T. and A.B, and that A.B. never made any complaints to them about T.T. They also testified that T.T. did not begin teaching A.B. how to drive until A.B. was

---

**1.** The Administrative Law Judge (ALJ) noted in her Adjudication that A.B. turned 18 on December 4, 2006, and, therefore, she was limited to findings which may have occurred between 2000 and December 3, 2006, when A.B. was under the age of 18.

**2.** 23 Pa.C.S. §§ 6301–6386.

**3.** An "indicated report" is defined as:
A child abuse report made . . . if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:
    (1) Available medical evidence.
    (2) The child protective service investigation.
    (3) An admission of the acts of abuse by the perpetrator.
23 Pa.C.S. § 6303.

15 years old. R.T. also testified that she never witnessed any inappropriate contact between T.T. and A.B, stating that A.B. never appeared to be upset after returning home from her driving lessons with T.T. R.T. testified that she witnessed T.T. put money in A.B.'s shirt but that neither she nor A.B. felt that contact was inappropriate. She confirmed A.B.'s testimony about the time A.B. told her that she hated T.T., and also testified that A.B. telephoned her on December 23, 2008, and disclosed that T.T. had been inappropriately touching her since she was 12 years old. However, R.T. stated that she did not believe A.B.'s allegations. R.K., the family friend, testified that A.B. told her at a party in June or July of 2006 that T.T. had sexually abused her, but that A.B. recanted the allegation shortly thereafter and indicated that she just wanted attention. R.K. also testified that she did not believe A.B.'s allegation because A.B. had a history of lying.

T.T. admitted to taking A.B. out alone on back roads when she was 15 years old in order to teach her how to drive, but denied inappropriately touching her or placing her hand on his penis. He also admitted to putting money in the top of A.B.'s shirt on two or three occasions when A.B. was home from college, and to disciplining A.B. on occasion when she was younger, but denied ever having any inappropriate contact with A.B.

■■■ The ALJ found the testimony of A.B. to be credible, noting that it was "straight forward, detailed and . . . consistent with the initial report which was re-ceived by ChildLine, the interview with [CYS], and the disclosure to her mother on December 23, 2008." (ALJ's June 10, 2010 Adjudication at 8). The ALJ also found CYS caseworker Tunstall's testimony relating to her investigation to be credible. With regard to T.T.'s witnesses, the ALJ found the testimony of R.T. as well as that of T.T.'s sons to be credible as it related to never witnessing inappropriate contact between T.T. and A.B., but noted that this was not unusual because A.B. stated that she was alone with T.T. when the alleged incidents occurred. Moreover, the ALJ found that R.T.'s testimony that A.B. told her she would explain why she hated T.T. after she turned 18 was credible and that it corroborated A.B.'s own testimony. The ALJ also found R.K.'s testimony regarding A.B.'s disclosure of sexual abuse by T.T. to be credible, but found "the fact [A.B.] disclosed and then recanted allegations of sexual abuse at a party does not mean the allegation was false, and does not discount her credibility with reports to [CYS] or her testimony at the hearing." *Id.* The ALJ found T.T.'s testimony regarding the abuse allegations to be not credible, concluded that there was substantial evidence to support a finding of abuse and recommended that T.T.'s appeal be denied. The Bureau adopted the ALJ's recommendation in its entirety, and T.T. requested reconsideration. After granting T.T.'s request for reconsideration, the Secretary entered a Final Order upholding the Bureau's order. This appeal by T.T. followed.[4]

4. Our standard of review of the Department's decision is limited to determining whether the adjudication violates constitutional rights or is not in accordance with the Law or whether the findings of fact are supported by substantial evidence. *C.S. v. Department of Public Welfare,* 879 A.2d 1274, 1278 n. 7 (Pa. Cmwlth.2005). Substantial evidence, for purposes of child abuse expungement proceed-ings, is defined as "evidence which so preponderates in favor of a conclusion that it outweighs, in the mind of the factfinder, any inconsistent evidence and reasonable inferences drawn therefrom." *R.P. v. Department of Public Welfare,* 820 A.2d 882, 885 (Pa. Cmwlth.2003). In determining whether substantial evidence exists, we must give the party in whose favor the decision was rendered

■ On appeal, T.T. initially claims that CYS lacked jurisdiction to conduct an investigation and file a report indicating child abuse because A.B. was not a child at the time she disclosed the purported abuse. T.T. failed to raise this issue in the agency proceedings or in his petition for review, and even if we agreed with his contention that this is a jurisdictional question which can be raised at any time, his jurisdictional argument would still fail. Among other things, "child abuse" is defined as "an act ... by a perpetrator which causes ... sexual abuse or sexual exploitation of a child under 18 years of age." 23 Pa.C.S. § 6303(b)(1)(ii). Under the Law, then, it is not the age of the victim when the report is made but the age of the victim at the time the purported abuse occurred that is relevant. In this case, while A.B. was over 18 when she reported the abuse, what is crucial is that the abuse occurred while she was still a child.

■ T.T. next alleges that CYS did not conduct its investigation in accordance with the requirements of the Law, which he contends renders the indicated abuse report invalid. Specifically, he argues that CYS did not interview A.B. until 51 days after it received the abuse report despite the requirement in Section 6368(a) of the Law that the county agency shall commence an investigation within 24 hours of receipt of the abuse report.[5] Additionally, T.T. argues that CYS was required to complete and send the Child Protective Service Investigation Report (CY–48) to ChildLine within 30 calendar days of the receipt of the initial report, but did not do so until 58 days after the initial report.[6] Those delays, T.T. alleges, suggest that A.B. was not in need of protective services and warranted dismissal of the complaint. Ignoring that the investigation was begun within 24 hours, while there are time periods contained in the regulations directing CYS to take certain actions within a certain time, the only time period that requires expunction is contained in 55 Pa. Code § 3490.67(b)(3), which requires a report of abuse to ChildLine within 60 days. Because the required report was filed 58 days after the complaint, that provision has been satisfied.

■■ Finally, T.T. claims that substantial evidence is a constitutionally inade-

---

the benefit of all reasonable and logical inferences that may be drawn from the evidence of record. *R.A. v. Department of Public Welfare*, 41 A.3d 131, 136 n. 7 (Pa.Cmwlth.2012).

**5.** Section 6368(a) of the Law, relating to investigation of abuse reports, provides, in relevant part:

Upon receipt of each report of suspected child abuse, the county agency shall immediately commence an appropriate investigation and see the child immediately if emergency protective custody is required or has been or shall be taken or if it cannot be determined from the report whether emergency protective custody is needed. Otherwise, the county agency shall commence an appropriate investigation and see the child within 24 hours of receipt of the report.

**6.** 55 Pa.Code § 3490.67 provides, in relevant part:

(a) The county agency shall send the Child Protective Service Investigation Report form (CY–48) to ChildLine within 30–calendar days of the receipt of the report of suspected child abuse.

(b) To avoid expunction of a case as required by § 3490.69 (relating to reports not received within 60–calendar days) when a status determination cannot be made and the county agency has petitioned the juvenile court, an arrest has been made or there is criminal court action pending, the county agency shall send a copy of the CY–48 to ChildLine with one of the following status determinations:

(1) Pending juvenile court action.

(2) Pending criminal court action.

(3) Indicated, when there is substantial evidence that the child was abused.

quate standard in child abuse expungement cases. Historically, in expungement proceedings, the Department has had the burden to show that the indicated report was accurate by substantial evidence.[7] *Bucks County Children and Youth Social Services Agency v. Department of Public Welfare*, 151 Pa.Cmwlth. 110, 616 A.2d 170 (1992). However, in the recently argued *G.V. v. Department of Public Welfare*, we held that the use of this standard to maintain statutorily-designated information from an indicated report on the ChildLine Registry did not adequately protect the rights of the accused and adopted the clear and convincing evidence standard for those proceedings. Clear and convincing evidence is the highest burden in our civil law and requires that the fact-finder be able to come to clear conviction, without hesitancy, of the truth of the precise fact in issue. *Suber v. Pennsylvania Commission on Crime and Delinquency*, 885 A.2d 678, 682 (Pa.Cmwlth.2005). To meet that standard, it necessarily means that the witnesses must be found to be credible, that the facts to which they have testified are remembered distinctly, and that their testimony is so clear, direct, weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. *Id.* Here, an order maintaining the indicated child abuse report summary on the Child-Line Registry against T.T., a Pennsylvania public school teacher, results in a significant impact not only on his personal and professional reputation, but also on his ability to continue practicing his profession. Such an impact demonstrates the need to apply the stricter clear and convincing evidence standard in expungement proceedings.[8]

Accordingly, because the Secretary may have weighed the testimony differently under the clear and convincing evidence standard, we vacate and remand this case to the Department to issue a new determination as to whether the evidence was clear and convincing that expungement of the indicated child abuse report summary from the ChildLine Registry was not warranted.

## ORDER

AND NOW, this *13th* day of *July,* 2012, this matter is vacated and remanded to the Department of Public Welfare, Bureau of Hearings and Appeals, to issue a new determination as to whether the evidence was clear and convincing that expungement of the indicated child abuse report summary from the ChildLine Registry was not warranted.

Jurisdiction relinquished.

---

7. We have held substantial evidence in that context to mean "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." *A.O. v. Department of Public Welfare*, 838 A.2d 35, 39 (Pa.Cmwlth.2003).

8. T.T. also raises two additional constitutional arguments. First, he claims that CYS's failure to conduct a thorough investigation constituted a violation of his due process rights. For the reasons stated above, we believe CYS conducted a proper investigation given the circumstances and, therefore, reject T.T.'s argument. T.T. also argues that CYS's failure to provide him with pre-determination notice and a hearing violated his due process rights. However, T.T. failed to raise this issue before the agency and it is, therefore, waived.