# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R.W.,                              :
                                   :
                    Petitioner     :    **CASE SEALED**
                                   :
         v.                        :    No. 26 C.D. 2015
                                   :
Department of Human Services,      :    Submitted:  August 28, 2015
                                   :
                    Respondent     :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  November 17, 2015**

R.W. (Mother) petitions for review of the Order of the Department of Human Services (DHS), Bureau of Hearings and Appeals (BHA), that adopted the Adjudication and Recommendation of an Administrative Law Judge (ALJ) to deny Mother's appeal and request to expunge an indicated report naming her as a perpetrator of child abuse by omission under the Child Protective Services Law (CPSL).[1]  Mother argues that the County Office of Children & Youth Services (CYS) did not meet its burden of proof because there is no evidence that Mother knew or should have known that any acts of abuse were occurring or that there was a significant risk to her minor child (Child).  Mother contends that her knowledge

_____
[1] 23 Pa. C.S. §§ 6301-6386.

of father's untreated mental health issues is not sufficient to support the conclusion that Mother was a perpetrator of child abuse by omission. Mother also argues that the evidence CYS relied upon was uncorroborated hearsay. Because we conclude that CYS did not meet its burden of proving that Mother was a perpetrator by omission, we reverse.

The facts in this matter, as found by the ALJ and adopted by the BHA, are as follows. Child is the biological child of Mother and M.B. (Father) (together, Parents), and was twenty-six months old when, on February 22, 2013, Child drowned in the bathtub of Parents' home while in Father's care. Child was born in Georgia and lived with Mother's parents (Grandparents) for about one and one-half years while Mother finished medical school "because it was too stressful for [Father] to care for [Child]." (Findings of Fact (FOF) ¶ 10.) While living with Grandparents, Child took swimming lessons, frequently played in a swimming pool that contained twelve inches of water, could stand in the pool, and, if water got on Child's face, knew to wipe the water off. Child moved to Pennsylvania, where Parents resided, approximately three months before February 22, 2013.

On that day, Child was in Father's care while Mother was at work at a local hospital as a resident. At some point during the day, Father placed Child in the bathtub, with five inches of water in it, for a bath. Both Parents "allowed [Child] to be unsupervised in the bathtub." (FOF ¶ 21.)

Child drowned in the bathtub, vomit was found in the bathtub, and there were bruises on Child's head. The County District Attorney's Office (DA Office)

2

conducted a criminal investigation; it was determined that "[C]hild died from cardiac arrest and asphyxiation/drowning[,] and the death was deemed a homicide." (FOF ¶¶ 22-23.) During an interview with the DA Office's Detective (Detective), Mother was asked "what she thought happened to [Child], [and Mother] disclosed that [Father] may have done something to her [C]hild." (FOF ¶ 27 (internal quotation marks omitted).) However, Mother also stated that "she believed [that Father] would never hurt anyone especially [Child]" and Child could have gotten into Father's sleeping pills. (Detective's Report at 2, R.R. at 148a.)

CYS performed an investigation that reviewed Child's medical records, the reports of law enforcement officials, and some of Father's medical records. From these records, CYS learned that "[C]hild was non-verbal and [Mother] was concerned about [Child's] lack of speech." (FOF ¶ 28.) CYS also learned that Father "had a history of mental health issues, including paranoid schizophrenia and psychosis," of which Mother was aware.[2] (FOF ¶ 15.) About a month prior to the February 22, 2013 incident, Father "had become increasingly paranoid and believed that his family was involved in a conspiracy with the FBI and Homeland Security and they were after him." (FOF ¶ 16.) Father "moved out of the master bedroom, would put tape on the light switches and record phone calls." (FOF ¶ 17.) Mother knew that Father had seen a psychiatrist before Child's death and had been prescribed medication; had not returned to the psychiatrist and was not taking the prescriptions; and was not receiving any mental health treatment. Mother's father, a retired psychiatrist, had expressed concerns to Mother regarding Father caring for Child.

---

[2] Father was admitted into a hospital on the night of February 22, 2013.

Based on its investigation, CYS filed an indicated report naming Mother "as the perpetrator, for physical neglect, by omission, upon [Child], specifically in the form of lack of supervision."[3] (FOF ¶ 1.) Mother appealed and a hearing was held before the ALJ. CYS presented the testimony of various keepers of Child's and Father's medical records, Detective, and the CYS caseworker that investigated this matter. CYS also entered as evidence, among other things, the Detective's Report, Child's medical records, and Father's medical records in which Mother made statements reflecting her knowledge of Father's history of mental illness. Mother did not testify at the hearing.

CYS argued that Mother "failed to protect [Child] from [Father] and knew or should have known that [Father] presented a threat of danger to [Child]." (Adjudication at 5.) Specifically, CYS contended that Mother, "who is employed in the health care field," knew that Father's mental health issues were not treated and were getting worse and did not "remove [Child] from harm's way." (Adjudication at 5.) Mother asserted that CYS had not met its burden of proving that she was a perpetrator by omission.

The ALJ set forth the following applicable law: in reviewing an allegation of child abuse by omission, the standard "is whether a reasonable person in the position of the parent knew or should have known that acts of abuse were occurring and whether the parent failed to take steps to remove child from harm's

---

[3] CYS also filed an indicated report of child abuse against Father "as the perpetrator, for physical neglect, upon [Child], specifically in the form of lack of supervision." (FOF ¶ 2.) Father did not appeal his indicated report.

4

way." (Adjudication at 6, 8 (citing Bucks County Children and Youth Social Services Agency v. Department of Public Welfare, 616 A.2d 170 (Pa. Cmwlth. 1992) (Bucks County)).) The ALJ further indicated that, to meet its burden, CYS had "to present substantial evidence that [Mother] knew or should have known of the significant risk to the subject child and failed to take protective measures." (Adjudication at 6 (citing L.S. v. Department of Public Welfare, 828 A.2d 480 (Pa. Cmwlth. 2003)).)

After reviewing the facts under these standards, the ALJ concluded that "a reasonable person in [Mother's] position would have known that [Father], with his untreated mental health issues, presented a threat of danger to [Child] and failed to remove [Child] from harm's way." (Adjudication at 8.) The ALJ observed that Mother had ignored her father's warning and her own observations regarding Father's mental condition and allowed Father to be alone with Child. The ALJ also stated that Mother knew that Father "regularly allowed [Child] to be in the bathtub without supervision," did not correct that behavior, and "[a] reasonable person knows or should have known that leaving a two year old child unsupervised in the bathtub places a child at risk for drowning," particularly where Child appeared to have developmental delays[4] and was left with an individual with untreated mental health issues. (Adjudication at 9.) The ALJ concluded that:

> the evidence clearly establishes that [Mother] totally disregarded the complete danger to [Child's] life when she left [Child], a

---

[4] We note that the ALJ, and CYS, repeatedly refer to Child as having been developmentally delayed. Although Child had not yet learned to speak, Mother indicated that, otherwise, Child "was a healt[h]y normal 2 year old." (Detective's Report at 1, R.R. at 147a.)

developmentally delayed two year old, unsupervised in a bathtub and was aware of [Father's] extensive past and recent untreated mental health issues and continued to allow him to care for [Child]. [Mother's] behavior in this case can be construed as a gross deviation from the standard of care that a reasonable person would observe.

(Adjudication at 9.) Accordingly, the ALJ recommended that Mother's appeal be denied. The BHA adopted the ALJ's Adjudication and Recommendation in its entirety and denied Mother's appeal. Mother now petitions this Court for review.[5]

On appeal, Mother argues that CYS did not meet its burden of proving that she was a perpetrator by omission. This standard, Mother asserts, required CYS to establish that a reasonable person in her position "knew or should have known that acts of abuse *were occurring*" and "*failed to take steps to remove [Child] from harm's way*." (Mother's Br. at 18 (citing Bucks County, 616 A.2d at 174) (emphasis provided by Mother).) According to Mother, there was no reason for her to know that Father was a threat to Child's safety because there was no evidence that acts of abuse were occurring, that Father had attempted to abuse Child, threatened Child's safety, or that it was not unreasonable for Father, like her, to leave Child, who had swimming lessons and was familiar with water, briefly unattended in the bathtub. Mother argues that, in focusing on Father's mental health issues, CYS is attempting to create a new standard for child abuse by omission that suggests that those who have mental illnesses are "unfit to rear a child" and acts to "put the other parent on notice, despite the lack of any evidence

[5] "This Court's review is limited to determining whether legal error has been committed, whether constitutional rights have been violated, or whether the necessary findings of fact are supported by substantial evidence." F.R. v. Department of Public Welfare, 4 A.3d 779, 782 n.7 (Pa. Cmwlth. 2010).

6

demonstrating the other parent is a danger, that he or she is committing child abuse by omission because they [sic] do not take [the] child away." (Mother's Reply Br. at 10-11.)

CYS does not dispute that there was no evidence of prior abuse of Child by Father. CYS asserts, however, that such evidence was not required to prove that Mother committed child abuse by omission by placing Child's safety at risk when she left Child with Father, whom Mother knew had untreated and deteriorating mental health conditions. CYS contends that Mother's actions in saving two emails written by Father in 2008, and her statement to Detective that she thought that maybe Father had done something to Child, demonstrates that Mother knew that Child was in danger if left in Father's care and is proof that she is a perpetrator of child abuse by omission. Furthermore, CYS argues that because a reasonable person would not leave a two year old child unattended in a bathtub, Mother's actions in allowing Father to do so also demonstrated that she did not remove Child from harm's way when she left Child in Father's care.

At the time this matter arose, "child abuse" was defined in the CPSL, in pertinent part, as "[a]ny recent act *or failure to act by a perpetrator* which causes nonaccidental serious injury to a child under 18 years of age." Section 6303(b)(i) of the CPSL, 23 Pa. C.S. § 6303(b)(i) (emphasis added).[6] Because Mother is

_____

[6] Many of the definitions in the CPSL, including the definition of "child abuse," were recently amended and new definitions were added effective December 31, 2014 and July 1, 2015. However, because the allegations here arose on February 22, 2013, the prior versions of the definitions apply in this matter. Child abuse is now defined as, *inter alia,* "intentionally, knowingly or recklessly . . . [c]ausing the death of the child through any act or failure to act." Section 6303(b.1)(9) of the CPSL, 23 Pa. C.S. § 6303(b.1)(9).

accused of being a perpetrator of abuse by omission, it is Mother's "failure to act" which must have "cause[d] nonaccidental serious physical injury" in this case. Id. "Nonaccidental" was defined as "[a]n injury that is the result of an intentional act that is committed with disregard of a substantial and unjustifiable risk," 23 Pa. C.S. § 6303(a), and is considered the same standard as criminal negligence, Section 302(b)(4) of the Crimes Code, 18 Pa. C.S. § 302(b)(4).[7] F.R. v. Department of Public Welfare, 4 A.3d 779, 787 (Pa. Cmwlth. 2010). The burden of proof in an expungement hearing is on the county agency to show, by substantial evidence, that the indicated report is accurate and, if it fails to meet that burden, the request for expungement will be granted. Bucks County, 616 A.2d at 174. Section 6303(a) of the CPSL defines substantial evidence as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa. C.S. § 6303(a). "[I]n determining whether a finding of fact is supported by substantial evidence, the Court must give the party in whose favor the decision was rendered the benefit of all reasonable and logical inferences that may be drawn from the evidence . . . ." S.T. v. Department of Public Welfare, 681 A.2d 853, 856 (Pa. Cmwlth. 1996).

---

[7] Section 302(b)(4) defines "criminal negligence" as:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa. C.S. § 302(b)(4). The new definition of "child abuse" does not refer to nonaccidental injuries or criminal negligence, but refers to various levels of culpability, including intentionally, knowingly, and recklessly, which are defined in Section 302 of the Crimes Code, 18 Pa. C.S. § 302. Section 6303(a), (b.1) of the CPSL, 23 Pa. C.S. § 6303(a), (b.1).

The parties focus on two cases, <u>Bucks County</u> and <u>L.S.</u>, in which our Court evaluated whether a parent or caretaker should remain named as a perpetrator of child abuse by omission. In these cases, this Court considered whether the alleged perpetrators disregarded a substantial and unjustifiable risk of abuse to a child by failing to act to remove the child from harm's way. In <u>Bucks County</u>, a mother was identified as a perpetrator by omission for allegedly "fail[ing] to protect [her daughter] and plac[ing] her in the care of [her mother's paramour] in spite of the fact that [mother] knew or should have known that [paramour] had propensities toward inappropriate sexual conduct with the victim." <u>Bucks County</u>, 616 A.2d at 173. To establish that mother knew or should have known of the substantial and unjustifiable risk of paramour's conduct, the local agency cited an instance wherein the daughter, mother, and paramour "were in bed together and [paramour] said: [l]et's show [daughter] where Mr. Microphone goes," and a second instance where paramour struck daughter, knocking out a tooth, and, when daughter told mother that her mouth was bleeding, mother said shut up and took daughter to the dentist. <u>Id.</u> at 172 (internal quotation marks omitted) (second alteration in original). However, daughter denied telling her mother about the incidents of sexual abuse that had occurred, and the mother denied knowing about such abuse until shortly before being contacted by the local agency. <u>Id.</u> at 174. The expungement was initially granted and the local agency appealed to this Court. Because the factfinder did not resolve conflicts in the testimony and make specific findings as fact, we remanded for such findings and described the legal standard as follows:

> the appropriate standard to use to determine whether a parent or caretaker is a perpetrator by omission is whether a reasonable person in the position of the caretaker[] *knew or should have known* that **acts**

9

**of abuse were occurring** and the parent or caretaker failed to take steps to remove the child from harm's way.

Id. (bold emphasis added).

In L.S., an indicated report was filed against a daycare worker after one of the children she was supervising assaulted another child she was supervising while she was occupied with other classroom work. L.S., 828 A.2d at 482. The local agency asserted that the daycare worker was a "perpetrator of child abuse [by omission] because she did not properly supervise the room," the assaulting child had been diagnosed with Attention Deficit Hyperactivity Disorder, was on medication, and previously had an incident with the victim. Id. The expungement was initially granted, but the Secretary of Public Welfare (Secretary) disagreed, instead concluding that the daycare worker "knew or should have known that [the assaulting child] posed a significant risk to [the victim's] safety because of [his] psychological history and his earlier assault on [victim,] and [daycare worker] failed to take any protective measures." Id. at 483. On appeal, this Court reversed the Secretary, finding that the local agency failed to present evidence that the daycare worker "knew or should have known of the significant risk posed" because there was no evidence that the daycare worker "had actual knowledge of [the assaulting child's] behavioral background," which was a psychological disorder and a history of assaulting the victim. Id. at 484.

After applying the analysis in Bucks County and L.S. to the record here, we conclude that CYS did not meet its burden of proving that Mother was a perpetrator by omission based on her leaving Child in the care of Father. Under the CPSL, in order for Mother to be a perpetrator by omission, she must have

disregarded the substantial and unjustifiable risk that Father would abuse Child if Child was left in Father's care. 23 Pa. C.S. § 6303(a). CYS argues that, although in Bucks County this Court phrases the standard as whether the parent "knew or should have known that *acts of abuse were occurring,*" Bucks County, 616 A.2d at 174 (emphasis added), a history of abuse is not required. Instead, as described in L.S., Mother can be a perpetrator by omission if she "knew or should have known of the significant risk posed by [Father] and failed to take protective measures." L.S., 828 A.2d at 484.

Based on the finding that Mother knew of Father's history of untreated mental health issues, that Father left Child in the bathtub without supervision, and Mother's after-the-fact statement to Detective that Father may have done something to Child,[8] CYS argues that Mother also knew or should have known that Father posed a significant risk of physically abusing Child and did not take steps to protect Child. The parties agree there is no evidence that Father had abused Child prior to the date of Child's death, had physically harmed Child, threatened to harm Child, or had harmed another person, unlike in Bucks County, 616 A.2d at 172-73 or L.S., 828 A.2d at 484. See also C.K. v. Department of Public Welfare, 869 A.2d 48, 57 (Pa. Cmwlth. 2005) (mother was perpetrator where she placed her children in imminent risk of physical injury or sexual abuse by taking her children to live with indicated perpetrators of sexual abuse despite being warned of their status and that she should not leave the children with them); K.S. v. Department of

---

[8] The two emails from 2008 cited by CYS neither demonstrated that Father had a history of abuse nor dangerous or threatening behavior. They appear to reflect Father's struggles with his employment at that time, his desire to improve his situation and not to "hit rock bottom," and to take things "day by day." (CYS's Ex. C-3, R.R. at 150a-52a.)

11

Public Welfare, 564 A.2d 561, 563-64 (Pa. Cmwlth. 1989) (mother was a perpetrator of child abuse by omission because she knew that her infant sustained numerous unexplained injuries, including fractures on both legs, while in the care of others but continued to leave the infant in the care of those individuals). Mother's after-the-fact statement is not evidence that she was aware of any such behavior on Father's part. In this case, Father had some delusions and paranoia, which manifested in Father's sleeping in the basement, placing tape over light switches, and recording his phone calls. Mother knew that Father and Child had just returned from a two week vacation during which there were no indications that anything amiss occurred. (Hr'g Tr. at 94, R.R. at 97a; Detective's Report at 1, R.R. at 147a.) Mother also knew that Child had taken swimming lessons and was familiar with water, which is apparently one of the reasons law enforcement deemed Child's drowning in five inches of water a homicide. (Hr'g Tr. at 16-18, R.R. at 19a-21a.)

Under these circumstances, Mother's knowledge of Father's mental illness and that he would periodically leave Child unattended in the bathtub did not make Mother aware that Father posed a significant risk of physically abusing Child such that her failure to remove Child from Father's care made her a perpetrator of child abuse by omission under the CPSL. We recognize that the death of Child under these circumstances was a tragedy that has unquestionably changed the lives of all involved and that CYS understandably wants to assure that the responsible parties are identified; however, even under these tragic circumstances, we cannot focus solely on the existence of a parent's mental illness as the basis for placing the other parent on notice that a child is at substantial risk of child abuse. To do otherwise

12

could conflate the diagnosis and treatment of a mental illness with being a danger to one's child. Based on the evidence presented in this case, CYS did not meet its burden of proving that Mother was a perpetrator by omission.[9]

Accordingly, the Order is reversed.

_____

**RENÉE COHN JUBELIRER, Judge**

---

[9] Because of our conclusion that CYS did not meet its burden of proof, we do not address Mother's argument regarding the use of uncorroborated hearsay evidence.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| R.W., | : | |
| | : | |
| Petitioner | : | **CASE SEALED** |
| | : | |
| v. | : | No. 26 C.D. 2015 |
| | : | |
| Department of Human Services, | : | |
| | : | |
| Respondent | : | |

# O R D E R

**NOW**, November 17, 2015, the Order of the Department of Human Services, in the above-captioned matter, is hereby **REVERSED**.

_____
**RENÉE COHN JUBELIRER, Judge**