IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.C.,                                          :
                    Petitioner                 :
                                               :        **CASE SEALED**
            v.                                 :        No. 2336 C.D. 2014
                                               :        Argued: April 13, 2016
Department of Human Services,                  :
                    Respondent                 :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


OPINION
BY PRESIDENT JUDGE LEAVITT                         FILED: November 23, 2016

            D.C., who has been named as a perpetrator of child abuse in an
indicated report, petitions for review of an adjudication of the Department of
Human Services' Bureau of Hearings and Appeals that denied his request for a
*nunc pro tunc* hearing.[1]  In doing so, the Bureau adopted the recommendation of its
Administrative Law Judge (ALJ), who concluded that D.C.'s delay in filing his
appeal was not caused by a breakdown in the administrative process or non-
negligent reasons beyond D.C.'s control.   D.C. contends, however, that the
Department's equivocal and confusing notice of how to get a hearing established a

_____

[1] "An 'indicated report' of child abuse is made by the investigating agency when it determines
that substantial evidence of the alleged abuse exists based on any of the following: available
medical records, the child protective services investigation, or an admission of abuse by the
perpetrator."  *C.S. v. Department of Public Welfare*, 879 A.2d 1274, 1277 n.4 (Pa. Cmwlth.
2005); *see* Section 6303 of the Child Protective Services Law, 23 Pa. C.S. §6303.

breakdown in the administrative process and, thus, entitles him to a *nunc pro tunc* appeal. For the reasons that follow, we reverse.

## Background

On February 12, 2014, D.C. was identified as a perpetrator of child abuse by Washington County Children and Youth Services (CYS). On April 2, 2014, CYS filed an indicated report of child abuse with the Department's ChildLine Registry. On June 6, 2014, the Department notified D.C. it had received and was maintaining CYS's indicated report on its ChildLine Registry. The Department's notice stated, in relevant part, as follows:

> If you disagree with the decision that you committed child abuse or student abuse, you have the right to a review of that decision. **You must respond within 45 days of the mailing date listed at the top of this notice**.
>
> To ask for this review, you can use the enclosed form and check off the first box on the form. After the review, you will get another letter telling you the decision. If you lose at this level, the letter will tell you how to ask for a hearing. If you follow the instructions in the letter, you have the right to a hearing.
>
> **OR**
>
> You can skip the review described above and ask the Bureau of Hearings and Appeals for a hearing now. To ask for a hearing, you can use the enclosed form and check off the second box on the form.
>
> **YOUR REQUEST MUST BE POSTMARKED WITHIN 45 DAYS FROM THE MAILING DATE ON THIS NOTICE. IF YOUR REQUEST IS LATE, YOU MAY BE ON THE CHILD ABUSE REGISTER FOREVER.**
>
> **This is a very serious matter.** You may wish to contact a lawyer to represent you.

2

Reproduced Record at 9 (R.R. ___) (emphasis in original). At the time D.C. received this notice, he was being investigated by the Pennsylvania State Police and was under threat of criminal charges for the incident described in the indicated report. Because D.C. could not afford to engage counsel on both matters, he chose to focus his resources on the criminal matter and did not respond to the Department's notice within 45 days.

On October 7, 2014, after he learned that he would not be facing criminal charges, D.C. requested a hearing on the indicated report. The ALJ conducted a telephonic hearing to consider whether D.C.'s untimely appeal should be accepted *nunc pro tunc*. On November 21, 2014, the ALJ recommended that D.C.'s appeal be dismissed. The ALJ acknowledged that the Department's notice was presented in equivocal terms, *i.e.,* "If your request is late, you may be on the child abuse register forever." R.R. 9 (emphasis omitted). However, the ALJ reasoned that this equivocation was justified because the Department retains the name of a perpetrator "forever" only where the perpetrator's date of birth or Social Security number is known. *See* Section 6338(c) of the Child Protective Services Law, 23 Pa. C.S. §6338(c).[2] Where that information is not known to the Department, the indicated report will be expunged even if the perpetrator has never requested it. *Id*. The ALJ found that the Department's use of the subjunctive "may" in the notice covered the exceptional circumstance where a report is purged

---

[2] Section 6338(c) states:

> (c) Retention of information.—*The Statewide database shall indefinitely retain the names of perpetrators* of child abuse and school employees who are subjects of founded or indicated reports *only if the individual's Social Security number or date of birth is known to the department*. The entry in the Statewide database shall not include identifying information regarding other subjects of the report.

23 Pa. C.S. §6338(c) (emphasis added).

3

because the Department does not know the perpetrator's date of birth or Social Security number.

The Bureau adopted the ALJ's recommended adjudication to dismiss D.C.'s appeal. D.C. requested reconsideration from the Secretary of Human Services, which was denied on December 24, 2014. D.C. then petitioned for this Court's review.

## Appeal

On appeal,[3] D.C. contends that he was entitled to challenge the indicated report *nunc pro tunc* for two reasons. First, D.C. argues that the Department's notice was inadequate because it did not state that a hearing request would not be accepted after 45 days, and this inadequacy in the notice constituted a breakdown in the administrative process. Second, D.C. asserts that the threat of criminal charges was a non-negligent circumstance beyond his control and justified his waiting until the State Police decided not to file charges before requesting a hearing. The Department counters that D.C. lacked good cause for delaying his appeal.

## Standard for *Nunc Pro Tunc* Appeal

This Court has established that "[a]n appeal *nunc pro tunc* may be allowed where the delay in filing the appeal was caused by extraordinary circumstances involving fraud or some breakdown in the administrative process, or non-negligent circumstances related to the appellant, his or her counsel or a third

---

[3] This Court's review determines whether the appellant's constitutional rights have been violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence. *G.M. v. Department of Public Welfare*, 957 A.2d 377, 379 n.1 (Pa. Cmwlth. 2008).

party." *H.D. v. Department of Public Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth. 2000). "Inadequate notice is exactly the type of breakdown in the administrative process that satisfies the standard for a *nunc pro tunc* appeal." *Beaver County Children & Youth Services v. Department of Public Welfare*, 68 A.3d 44, 48 (Pa. Cmwlth. 2013). The notice informing an alleged perpetrator of abuse of his right to appeal must "provide to the recipient information essential to calculating the appeal period." *Julia Ribaudo Senior Services v. Department of Public Welfare*, 969 A.2d 1184, 1188 (Pa. 2009). Stated otherwise, an inadequate notice to an individual named as a perpetrator of child abuse in an indicated report provides grounds for a *nunc pro tunc* appeal. In any *nunc pro tunc* appeal, the petitioner must also show that: (1) he filed his appeal shortly after learning of and having the opportunity to address his untimeliness; (2) the untimeliness is of a short duration; and (3) the appellee will not be prejudiced by the delay. *H.D.*, 751 A.2d at 1219.

## I. The Child Protective Services Law

We begin with a review of the standards and procedures of the Child Protective Services Law, 23 Pa. C.S. §§6301 – 6386.[4] A central feature of the statutory scheme is that indicated reports are entered into the ChildLine Registry on the basis of an investigation by the County or the Department and not on the basis of an evidentiary hearing.

Section 6312 of the Child Protective Services Law invites "[a]ny person" with "reasonable cause to suspect" child abuse to make a report of

---

[4] The statute has gone through several iterations. At one point, there was no deadline for requesting a hearing to have an indicated report of child abuse removed from the ChildLine Registry. *See K.S. v. Department of Public Welfare*, 564 A.2d 561, 564 (Pa. Cmwlth. 1989). This review considers the most recent version of the Child Protective Services Law.

5

suspected child abuse.  23 Pa. C.S. §6312.[5]  A CYS caseworker then investigates. At a minimum, the caseworker must interview the victim and perpetrator, if the perpetrator can be found.  23 Pa. C.S. §6368(d)(4).[6]  The regulation encourages a broader investigation.  55 Pa. Code §3490.55(d).[7]  Regardless of the scope of the investigation, time is of the essence because CYS must "determine within 60 days of the date of the initial report of child abuse that the report is a founded report, an

---

[5]  Additionally, Section 6311 of the Child Protective Services Law requires certain adult individuals, designated as mandated reporters, to report suspected child abuse if they have "reasonable cause to suspect that a child is a victim of child abuse."  23 Pa. C.S. §6311(a). Examples of mandated reporters are health care workers, school employees, clergy, law enforcement officers and foster parents.  *See* 23 Pa. C.S. §6311(a)(1)-(16).

[6] Section 6368(d)(4) of the Child Protective Services Law states:

> (d) Investigative actions. – During the investigation, all of the following shall apply:
>
> * * *
>
> (4) The investigation shall include interviews with all subjects of the report, including the alleged perpetrator. If a subject of the report is not able to be interviewed or cannot be located, the county agency shall document its reasonable efforts to interview the subject and the reasons for its inability to interview the subject. The interview may be reasonably delayed if notice of the investigation has been delayed pursuant to subsection (m).

23 Pa. C.S. §6368(d)(4).

[7] The regulation states:

> (d) When conducting its investigation, the county agency shall, if possible, conduct an interview with those persons who are known to have or may reasonably be expected to have, information relating to the incident of suspected child abuse including, but not limited to, all of the following:
>> (1) The child, if appropriate.
>> (2) The child's parents or other person responsible for the child's welfare.
>> (3) The alleged perpetrator of the suspected child abuse.
>> (4) The reporter of the suspected child abuse, if known.
>> (5) Eyewitnesses to the suspected child abuse.
>> (6) Neighbors and relatives who may have knowledge of the abuse.
>> (7) Day care provider or school personnel, or both, if appropriate.

55 Pa. Code §3490.55(d).

indicated report or an unfounded report[.]" 23 Pa. C.S. §6337(b).[8] The filing of an indicated report of abuse is approved by a CYS administrator or the Secretary of Human Services, depending on which agency initiated the investigation. 23 Pa. C.S. §6368(e). Notice of the filing must be given to the perpetrator about the effect of the report and his right to challenge it. 23 Pa. C.S. §6368(f).[9]

Although reports are not generally available to the public, 23 Pa. C.S. §6339, the Child Protective Services Law gives numerous persons access to indicated reports, including physicians and hospital administrators who treat

---

[8] The 60-day deadline may be stayed where "court action has been initiated and is responsible for the delay." 23 Pa. C.S. §6337(b).

[9] Section 6368(f) states:

> Immediately upon conclusion of the child abuse investigation, the county agency shall provide the results of its investigation to the department in a manner prescribed by the department. Within three business days of receipt of the results of the investigation from the county agency, the department shall send notice of the final determination to the subjects of the report, other than the abused child. The determination shall include the following information:
>
> (1) The status of the report.
> (2) The perpetrator's right to request the secretary to amend or expunge the report.
> (3) The right of the subjects of the report to services from the county agency.
> (4) The effect of the report upon future employment opportunities involving children.
> (5) The fact that the name of the perpetrator, the nature of the abuse and the final status of a founded or indicated report will be entered in the Statewide database, if the perpetrator's Social Security number or date of birth are known.
> (6) The perpetrator's right to file an appeal of an indicated finding of abuse pursuant to section 6341 (relating to amendment or expunction of information) within 90 days of the date of notice.
> (7) The perpetrator's right to a fair hearing on the merits on an appeal of an indicated report filed pursuant to section 6341.
> (8) The burden on the investigative agency to prove its case by substantial evidence in an appeal of an indicated report.

23 Pa. C.S. §6368(f).

children, a guardian *ad litem*, agency and court personnel, federal auditors, law enforcement officials and designated county officials. 23 Pa. C.S. §6340(a). Where the alleged perpetrator works in a school or child-care facility, his employer must "receive notice of a pending allegation and the final status of the report following the investigation." 23 Pa. C.S. §6340(a)(13)(i). Persons who wish even to volunteer in an activity involving children must provide "[a] certification from the department as to whether the applicant is named in the Statewide database as the alleged perpetrator in a pending child abuse investigation or as the perpetrator of a founded report or an indicated report."[10] 23 Pa. C.S. §6344(b)(2). A person responsible for employment decisions must obtain such certification under penalty of law. 23 Pa. C.S. §6344(b.2).[11]

As more fully discussed below, the Department must notify the perpetrator that he, or she, has been identified as a child abuser on the ChildLine Registry. *See* 23 Pa. C.S. §6338(a). Because the indicated report goes into the registry without a hearing, the perpetrator does not know the evidence on which the determination was made. The indicated report itself contains only a brief

---

[10] The reporting requirements in Section 6344 apply to employees and contractors of child-care services; foster parents; prospective adoptive parents; self-employed providers of child-care services; individuals 14 years of age or older applying for or holding a paid position with a child-care program, activity or service who are responsible for a child's welfare or have direct contact with children; and school employees. 23 Pa. C.S. §6344(a), (a.1).

[11] Section 6344(b.2) states:

> An employer, administrator, supervisor or other person responsible for employment decisions shall require an applicant to submit the required documentation set forth in this chapter or as required in section 6344.4. An employer, administrator, supervisor or other person responsible for employment decisions that intentionally fails to require an applicant to submit the required documentation before the applicant's hiring or upon recertification *commits a misdemeanor of the third degree*.

23 Pa. C.S. §6344(b.2) (emphasis added).

8

description of abuse. In the meantime, the perpetrator suffers a loss to reputation, and perhaps employment, as a result of the report. The statute provides a post-deprivation hearing, but it is not scheduled automatically. It must be requested.

The lack of a pre-deprivation hearing in the Child Protective Services Law raises a serious due process question. The Missouri Supreme Court has declared Missouri's version of our Child Protection Services Law unconstitutional because it did not provide a pre-deprivation hearing.

In *Jamison v. State of Missouri, Department of Social Services*, 218 S.W.3d 399 (Mo. 2007), an anonymous caller to the state's child abuse and neglect hotline alleged that Mildred Jamison and Betty Dotson had failed to supervise the children in their care at a residential child-care facility.[12] The Missouri Department of Social Services, Division of Family Services, investigated and entered the names of both women on the state's child abuse registry. Sometime later, the Division of Family Services informed Jamison and Dotson that it confirmed their listing and advised that they could seek further review by the Child Abuse and Neglect Review Board. They did so, and the board held a hearing several months later, which culminated in their names remaining in the Central Registry. The women sought *de novo* judicial review with the county circuit court. Two years later, the circuit court held that the statute was unconstitutional under the United States and Missouri Constitutions because it infringed on Jamison's and Dotson's liberty interest in their reputation, nurses' licenses and ability to seek employment in their chosen profession without first giving them "a meaningful hearing at a meaningful time." *Id.* at 404.

---

[12] Jamison, a registered nurse, was the founder and chief executive officer of the facility. Dotson, a licensed practical nurse, was an employee.

9

On appeal, the Missouri Supreme Court affirmed. It began with a review of federal procedural due process analysis, which first determines whether the plaintiff has been deprived of a constitutionally protected liberty or property interest. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). If so, the court then examines whether the procedures attendant to the deprivation of the protected interest are constitutionally sufficient. *Id.* Three factors are considered in determining what procedures are constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The United States Supreme Court has consistently held that "some form of hearing is required before an individual is finally deprived of a property interest [because] [t]he 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Id.* at 333 (citations omitted) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)).

Applying these principles, the Missouri Supreme Court first concluded that Jamison and Dotson had been deprived of a liberty interest under the so-called "stigma plus" test. *Paul v. Davis*, 424 U.S. 693, 701 (1976). For stigmatization to implicate constitutional rights, the plaintiff must show that the state action affects some tangible liberty or property interest. *Id.* The Court found

10

"stigma" resulted from being listed on a child abuse registry that was available to employers and agencies involved with care or custody of children. The registry listing precluded Jamison and Dotson from holding employment in their chosen profession. This satisfied the "stigma plus" test.

The *Jamison* court then considered the sufficiency of the post-deprivation hearing procedures. The court was troubled by the facts that an individual is listed in the registry as a child abuser based solely on an investigator's determination; is not given formal notice of the charges prior to being listed; and has no opportunity to respond to the investigator's determination until the hearing. The court concluded that "[t]he investigation alone, even after review by the local director, is plainly insufficient to support the loss of liberty that accompanies listing in the Central Registry. … 'No matter how elaborate, an investigation does not replace a hearing.'" *Jamison*, 218 S.W.3d at 408-09 (quoting *Winegar v. Des Moines Independent Community School District*, 20 F.3d 895, 901 (8th Cir. 1994)). The Missouri Supreme Court emphasized the risk of an erroneous deprivation of one's liberty interest, noting that the Board reversed the Division in approximately one-third of the appeals. Finally, the *Jamison* court criticized the stately pace by which the post-deprivation process moved. Taking all these factors into consideration, the court held that a pre-deprivation hearing was required.[13]

Pennsylvania's Child Protective Services Law raises the same issues as *Jamison*. Notably, the analysis on deprivation of a constitutionally protected

---

[13] The court rejected the Division's argument that a post-deprivation hearing was sufficient because of the need to protect the victims of child abuse and other children with whom a perpetrator might come into contact. The court posited that the state's significant interest in protecting children from abuse and neglect could be fulfilled by other means such as by the criminal justice system and the Division's authority to physically remove children from dangerous environments.

liberty interest is more straightforward because in Pennsylvania reputation is expressly protected in Sections 1 and 11 of Article I of the Pennsylvania Constitution.[14] Citing Sections 1 and 11, our Supreme Court has held that reputation is "a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection." *R. v. Department of Public Welfare*, 636 A.2d 142, 149 (Pa. 1994). In Pennsylvania, therefore, reputational harm alone is an affront to one's constitutional rights; the "stigma plus" analysis is not necessary.

The Missouri Supreme Court's *Mathews* analysis on the sufficiency of the post-deprivation procedure is also relevant because Pennsylvania's Child Protective Services Law, like its Missouri counterpart, allows an alleged perpetrator's name to be placed on the ChildLine Registry based solely on a caseworker's investigation, where it remains unless and until there is an adjudication that it should be removed. Further, there is no post-deprivation hearing unless it is requested by the perpetrator. In short, the "right" to the post-deprivation hearing is lost if not timely requested by the alleged perpetrator.

---

[14] Article I, Section 1 states:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, §1. Article I, Section 11 states:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. art I, §11.

The post-deprivation process provided in Pennsylvania's Child Protective Services Law has already been criticized in published Pennsylvania appellate opinions. In *G.V. v. Department of Public Welfare*, 91 A.3d 667, 674 n.1 (Pa. 2014) (Saylor, J., concurring), Justice Saylor, now Chief Justice, criticized "the entry of an individual's name in the ChildLine registry prior to any judicial or quasi-judicial assessment," noting that that practice "is in tension with the constitutional preference for pre-deprivation process." Justice Saylor opined that "whether the Pennsylvania statute reflects adequate process remains seriously in question." *Id*. at 676. In this regard, Justice Saylor quoted a dissenting opinion by Senior Judge Friedman that bears repeating here for its cogent explanation of the due process issue:

> It shocks my conscience that the [Child Protective Services] Law would allow the investigating caseworker to render a *de facto* adjudication that is adverse to an individual's reputation *without* an independent adjudicator having had the opportunity to consider the investigator's evidence of child abuse in accordance with established procedures of due process. This is particularly so because unless, or until, the alleged abuser timely requests an expunction hearing, the names of the falsely accused may nevertheless be released to physicians, child advocates, courts, the General Assembly, the Attorney General, federal officials, county officials, law enforcement officials, the district attorney and others. Thus, by the time [the Department] orders the expunction of an indicated report, a person's reputation already may be tarnished erroneously.

*K.J. v. Department of Public Welfare*, 767 A.2d 609, 616 n.9 (Pa. Cmwlth. 2001) (Friedman, J., dissenting) (emphasis in original) (holding that a due process challenge to the Child Protective Services Law had been waived).

Numerous courts, following the lead of the Missouri Supreme Court, have held that due process requires a pre-deprivation hearing before a citizen can

13

be placed on a government-maintained list of child abusers.[15]  Simply, the question of whether the process available to an alleged perpetrator under the current version of the Child Protective Services Law satisfies constitutional standards has yet to be squarely addressed.  It is not an issue in this case.

The issue in this case is the adequacy of the notice of the post-deprivation hearing available under the Child Protective Services Law, which hearing must be timely requested or forever lost.  The need for a clear notice to the named perpetrator is critical because the deprivation has already taken place and merely on the strength of an investigation.  It is in this context that we consider D.C.'s claim that the Department's notice was confusing and, thus, he is entitled to a post-deprivation hearing under established *nunc pro tunc* principles.

## II.  Equivocal Language in Notice

D.C. contends that the Department's notice was ambiguous because it did not state that a hearing request received later than 45 days would be rejected but, rather, implied the opposite.  The statement that "[i]f your request is late, you *may* be on the child abuse register forever" suggested that the Department would

---

[15] *See, e.g.*, *Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir. 2008), *rev'd on other grounds*, *Los Angeles County, California v. Humphries*, 562 U.S. 29 (2010); *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005); *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *In re W.B.M.*, 690 S.E.2d 41 (N.C. Ct. App. 2010); *Cavaretta v. Department of Children and Family Services*, 660 N.E.2d 250 (Ill. App. Ct. 1996). *But see, e.g., Anonymous v. Peters*, 730 N.Y.S.2d 689 (N.Y. Sup. Ct. 2001) (post-deprivation hearing sufficient to satisfy due process).

In *K.S. v. Department of Public Welfare*, 564 A.2d 561, 564 (Pa. Cmwlth. 1989), this Court considered whether a citizen was deprived of due process when her name was listed as a "perpetrator of child abuse in the central register without her having received notice or an opportunity to be heard."  *K.S.* rejected, summarily, the due process claim.  However, *K.S.* involved a version of the statute that allowed for a perpetrator to request removal from the list at any time; thereafter, a 1994 amendment inserted a 45-day time limit to a perpetrator's appeal.

accept an appeal filed after 45 days. R.R. 9 (emphasis added). The Department counters that it matters not that its notice was ambiguous because D.C.'s reason for not appealing within 45 days was lack of funds to pay his attorney for both the criminal and administrative proceedings.

In support of his position, D.C. relies on *C.S. v. Department of Public Welfare*, 879 A.2d 1274 (Pa. Cmwlth. 2005). There, the Department notified the named perpetrator, C.S., that he was the subject of an indicated report of child abuse. The notice stated that he had 45 days to request the Department to amend or destroy the report. The notice further stated, "If this request is denied, perpetrators *may* have a right to a hearing." *Id*. at 1277 (emphasis in original). C.S. did not appeal within the 45-day window, but attempted to do so six years later. The Department refused to consider his appeal as untimely. This Court reversed. We reasoned that the Department's use of the word "may" was equivocal, suggesting that even if a perpetrator appealed during the 45-day window, he would not necessarily receive a hearing. Accordingly, we granted C.S. the right to appeal the indicated report *nunc pro tunc*.

Here, the notice to D.C. was similarly equivocal. The notice stated that "you have the right to a hearing." R.R. 9. However, it did not say, simply and directly, that if D.C. did not request a hearing within 45 days of the notice, the hearing would not take place. Ever. Rather, the notice advised D.C. that "you *may* be on the child abuse register forever." R.R. 9 (emphasis added). By prefacing this statement with the conditional "[i]f your request is late," the notice suggested that submissions after 45 days might be accepted. However, the Department's

15

actual position is that it will not accept hearing requests filed more than 45 days after the date of the Department's notice.[16]

In addition, the Department's notice to D.C. departs from the actual statutory language that was in effect at all times relevant to this appeal. The version of Section 6338(a) of the Child Protective Services Law in effect when D.C. was named as a perpetrator stated as follows:

> (a) General Rule. – When a report of suspected child abuse or a report under Subchapter C.1 (related to students in public and private schools) is determined by the appropriate county agency to be a founded report or an indicated report, the information concerning that report of suspected child abuse shall be expunged immediately from the pending complaint file, and an appropriate entry shall be made in the Statewide central register. Notice of the determination must be given to the

---

[16] Notably, after D.C. filed his *nunc pro tunc* appeal, the Child Protective Services Law was amended effective December 31, 2014. The amendment provides another avenue to challenge a listing on the ChildLine Registry. The statute now provides, in relevant part:

> *At any time, the secretary may amend or expunge any record in the Statewide database under this chapter upon good cause shown* and notice to the appropriate subjects of the report. The request shall be in writing in a manner prescribed by the department. For purposes of this paragraph, good cause shall include, but is not limited to, the following:
>
> > (i) Newly discovered evidence that an indicated report of child abuse is inaccurate or is being maintained in a manner inconsistent with this chapter.
> >
> > (ii) A determination that the perpetrator in an indicated report of abuse no longer represents a risk of child abuse and that no significant public purpose would be served by the continued listing of the person as a perpetrator in the Statewide database.

23 Pa. C.S. §6341(a)(1) (emphasis added). It also gives "[a]ny person named as a perpetrator" 90 days to "request an administrative review by, or appeal and request a hearing before, the secretary to amend or expunge an indicated report." 23 Pa. C.S. §6341(a)(2).

Section 6341(a)(1) applies to the routine challenge to an indicated report. The notice must present the essential information about the hearing right in clear terms. *Julia Ribaudo Senior Services*, 969 A.2d at 1188.

16

subjects of the report, other than the abused child, and to the parent or guardian of the affected child or student along with an explanation of the implications of the determination. *Notice given to perpetrators of child abuse* and to school employees who are subjects of indicated reports for school employees or founded reports for school employees *shall include notice that their ability to obtain employment in a child-care facility or program or a public or private school may be adversely affected by entry of the report in the Statewide central register. The notice shall also inform the recipient of his right, within 45 days after being notified of the status of the report, to appeal an indicated report, and his right to a hearing if the request is denied.*

23 Pa. C.S. §6338(a), as stated in the prior Act of Dec. 16, 1994, P.L. 1292 (emphasis added).

The notice to D.C. stated that if "you disagree with the decision that you committed child abuse," you have "the right to a review of that decision." R.R. 9. Then, if "you lose at this level ... you have the right to a hearing." *Id.* This language did not conform to the applicable provisions of the Child Protective Services Law.

Section 6338(a), in the version applicable to D.C., required the Department to notify a perpetrator of "his right, within 45 days after being notified of the status of the report, to *appeal* an indicated report, and his right to *a hearing* if the request is denied." 23 Pa. C.S. §6338(a) (emphasis added). Section 6341(a)(2) of the Law, then in effect, stated that a perpetrator may "request the secretary to *amend* or *expunge* an indicated report," 23 Pa. C.S. §6341(a)(2) (emphasis added),[17] and if denied, the perpetrator "shall have the right to *a hearing*

---

[17] At the time of the Department's notice to D.C., the statute read, in relevant part:

> *Any person named as a perpetrator*, and any school employee named, in an indicated report of child abuse *may, within 45 days of being notified of the status*

**(Footnote continued on the next page . . .)**

17

before the secretary." 23 Pa. C.S. §6341(c) (emphasis added). In short, the applicable statute allowed perpetrators to appeal an indicated report, 23 Pa. C.S. §6338(a), or request that it be amended or expunged, 23 Pa. C.S. §6341(a)(2). Neither statutory provision used the word "review." A named perpetrator who compared the notice used here to the statute would be confused.

The Department's notice to D.C. was equivocal on whether late "requests" would be accepted, and it used language that departed from the words of the statute. Most critically, it was confusing. The notice stated "you can" use the form to request a review "if you disagree with the report." It then said that "you must respond within 45 days," without specifying the manner of this response. This suggests one can phone in a "response." The all caps bolded warning about the 45-day deadline did not specify whether the "request" that "must be postmarked" applied to the Department's internal "review" or the request for a hearing before the Bureau of Hearings and Appeals, or both. A notice that does not meet the "exacting requirements of 23 Pa. C.S. §6338(a)" constitutes a breakdown in the administrative process. *C.S.*, 879 A.2d at 1280.

---

**(continued . . .)**

> *of the report, request the secretary to amend or expunge an indicated report* on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter.

23 Pa. C.S. §6341(a)(2), as stated in the prior Act of Dec. 16, 1994, P.L. 1292 (emphasis added). The statute was amended effective December 31, 2014, *inter alia*, to provide for an administrative review process in addition to the appeal and hearing process, and expand the deadline for either avenue to 90 days. This change in the law highlights the arbitrariness of the 45-day deadline to which D.C. was subjected. There is nothing "magical" about 45 days.

The Department's notice to D.C. fell short of achieving the necessary clarity. The result would have been otherwise had it read as follows:[18]

> **If you want to remove your name from the Child Abuse Register, you have two options.**
>
> (1) You may appeal to the Department of Human Services. Use the enclosed form and check off the first box on the form.
>
> If the Department, after appeal, refuses to remove your name from the Child Abuse Register, then you will have the right to a hearing.
>
> **OR**
>
> (2) You can skip the appeal and ask the Bureau of Hearings and Appeals for a hearing now. Use the enclosed form and check off the second box on the form.
>
> In either case, your appeal or your request for a hearing must be postmarked **within 45 days of the mailing date at the top of this notice.**

---

[18] This is a suggestion and not a directive. As noted above, the form provided to D.C., which advised him he could seek administrative "review" of the indicated report or request a hearing, did not accurately reflect Section 6338(a) of the Child Protective Services Law at the time the form was issued. The 2014 amendments, which added an administrative review option, were enacted on December 18, 2013, but did not take effect until December 31, 2014. The Department presumably anticipated the two-option process when it drafted the version of the form sent to D.C. in June 2014.

In any event, the Department's notice needs to alert, and even alarm, the alleged perpetrator of the risk of not appealing. It also has to tell the alleged perpetrator how to appeal. It is not necessary to cover all the nuances of the Child Protective Services Law. Here, the ALJ reasoned that the equivocation in the notice to D.C. was satisfactory because unless the Department knows the perpetrator's date of birth or Social Security number, the perpetrator might not be in the ChildLine Registry "forever." This nuanced detail, of limited significance, did not justify the use of "may."

**WARNING: IF YOUR REQUEST FOR AN APPEAL OR A HEARING IS LATE, YOUR NAME WILL STAY ON THE CHILD ABUSE REGISTER FOREVER.**

**This is a very serious matter.** You may wish to contact a lawyer to represent you.

The Department contends that, even if its notice was defective, it is irrelevant because D.C. chose to wait to appeal due to his inability to afford counsel. An inadequate notice provides grounds for a *nunc pro tunc* appeal. *C.S.*, 879 A.2d at 1280. The subjective basis for the alleged perpetrator's decision not to file within the deadline is irrelevant because it cannot be known how an accurately worded notice would have affected his actions. For example, if D.C. had been aware of the consequences of not appealing within 45 days, he may have allocated his financial resources differently. Accordingly, we reject the Department's argument.

The Department's notice to D.C. was equivocal and confusing. These defects in his notice constituted a breakdown in the administrative process that warrants the grant of a *nunc pro tunc* appeal. Further, the untimeliness was of short duration, and the Department has neither asserted nor shown any prejudice by the delay. *H.D.*, 751 A.2d at 1219. Accordingly, D.C. has met the standards for a *nunc pro tunc* appeal.

## Conclusion

We hold that a person whose name is entered into the ChildLine Registry as a perpetrator of child abuse is entitled to a clear and unequivocal notice of the post-deprivation hearing as a matter of due process. The Department's notice to D.C. was confusing and equivocal, which constitutes a breakdown in the administrative process. Accordingly, D.C. is entitled to proceed with his

20

administrative appeal *nunc pro tunc*. The Department's adjudication is reversed, and the matter is remanded for further proceedings consistent with this opinion.[19]

_____
MARY HANNAH LEAVITT, President Judge

Judge Covey dissents.

---

[19] In light of our disposition, we need not consider D.C.'s second contention, *i.e.*, that the threat of criminal charges for the same incident created a non-negligent circumstance beyond his control that warranted a delay in filing his administrative appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.C.,                               :
        Petitioner          :
                            :   **CASE SEALED**
        v.                  :   No. 2336 C.D. 2014
                            :
Department of Human Services,        :
        Respondent          :

# **O R D E R**

AND NOW, this 23rd day of November, 2016, the order of the Department of Human Services, Bureau of Hearings and Appeals, dated November 24, 2014, in the above-captioned matter is hereby REVERSED and this matter is REMANDED for further proceedings consistent with the Court's opinion.

        Jurisdiction is relinquished.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.C.,                                    :
                    Petitioner           :
                                         :   **CASE SEALED**
          v.                             :   No. 2336 C.D. 2014
                                         :   Argued:  April 13, 2016
Department of Human Services,            :
                    Respondent           :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge

**DISSENTING OPINION**
**BY JUDGE BROBSON**                     **FILED:  November 23, 2016**


I agree with and embrace the important legal principles set forth in the bulk of the majority's opinion, particularly the holding that "a person whose name is entered into the ChildLine Registry as a perpetrator of child abuse is entitled to a clear and unequivocal notice of the post-deprivation hearing as a matter of due process." (Maj. Op. at 20.)  I dissent, however, because I believe that the language in the June 6, 2014 notice to D.C. was sufficiently clear and unambiguous to satisfy due process.  Moreover, given the availability of *nunc pro tunc* in appropriate circumstances, "***MAY* BE ON THE CHILD ABUSE REGISTER FOREVER**" is more accurate than "***SHALL* BE**."


_____
P. KEVIN BROBSON, Judge


Judge Simpson joins in this dissenting opinion.