**D.T., Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2005.

Decided May 4, 2005.

Stephen Patrizio, Philadelphia, for petitioner.

Debra Jenkins, Philadelphia, for intervenor.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

D.T. Petitions for review from an order of the Department of Public Welfare which upheld the decision of the Bureau of Hearings and Appeals which adopted the recommendation of the Administrative Law Judge (ALJ) denying D.T.'s request to expunge an indicated report of child sex abuse.[1] The Philadelphia Department of Human Services (DHS) is the intervenor. We affirm.

On December 31, 2002, DHS received a report from Child Protective Services which alleged that D.T. sexually abused K.W., a minor child, while K.W. was in D.T.'s care. Glen Wilson, a social worker for DHS conducted an investigation and, based on his findings, filed an indicated report of child abuse listing D.T. as the perpetrator of sexual abuse against K.W.

D.T. appealed the indicated report and a hearing was conducted before an ALJ. The ALJ found that D.T. has been a child care provider for nine years without any incident or complaint. D.T. cared for K.W. and his brother from 1996 until June, 2002. K.W. and his younger brother often stayed the night at D.T.'s home.

K.W. first told his younger brother about an incident with D.T. and then told his mother S.G. in December of 2002 of the incident, because he thought his brother was going to tell his mom and he felt a little scared because he thought he did something wrong. K.W. told his mother that when he was seven or eight, he watched a porno tape with D.T. According to K.W., D.T. told him he could come to her room. While in her room, D.T. told K.W. that it was hot and that he should take off his pants and K.W. did. She then commented that K.W. didn't have any drawers on. D.T. then told K.W. to put in a tape which he thought he got from on top of the VCR. K.W. then got into bed and D.T. began touching his private parts.

---

1. The Child Protective Services Law (Law), 23 Pa.C.S. § 6303(a) defines an indicated report as:

A child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:

    (1) Available medical evidence.

    (2) The child protective service investigation.

    (3) An admission of the acts of abuse by the perpetrator.

K.W. described the tape as a porno tape showing naked women engaged in sex and a girl on the tape said call this number.

K.W. further stated that D.T., who was wearing only a purple robe and a bra, put lotion on his penis and told him to get a thing out of the drawer, which he described as a fake penis. D.T. then opened her legs and told K.W. to put it inside her and she began to make noises. K.W. testified that the incident ended when D.T.'s sister rang the doorbell and D.T. told him to turn off the tape. D.T. then went downstairs and K.W. stayed in D.T.'s bed for the rest of the night unclothed.

K.W. admitted that a couple of months before the incident with D.T., he was caught with a friend in D.T.'s bedroom looking at the cover of an adult film that they had found under the bed. D.T. told both their mothers and K.W. received a beating from his mother as punishment. K.W. also admitted that when he was seven, he saw at least two dirty movies on cable television. The movies showed girls kissing and one lady was putting her finger inside of the thing. K.W. was caught by his mother. K.W. did not remember whether he saw the movies at home before or after the incident with D.T. K.W. also admitted he had been caught stealing candy and batteries in the past.

D.T. admitted owning a vibrator and adult movies but emphatically denied any allegations of sexual abuse involving K.W. D.T. believed that the allegations of sexual abuse resulted because in June of 2002, she stopped permitting S.G.'s children, including K.W., from coming to her home because S.G. owed D.T. for previous babysitting services. In fact, D.T. went to S.G.'s house on several occasions between June and December of 2002, to collect the money owed to her.

S.G., K.W.'s mother, admitted that there was a dispute as to child care payments and that in the past she had owed D.T. money. According to S.G., she stopped sending her children in June of 2002, because D.T.'s nephew was "messing" with her sons and further testified that he had hung her youngest from a tree, tearing his underwear.

Three of D.T.'s daycare clients testified that they were extremely satisfied with the service provided by D.T. and none of their children ever had any complaints against D.T.

The ALJ found the testimony of K.W. regarding the incident between K.W. and D.T. to be both consistent and credible. Although he observed animosity existed between S.G. and D.T. concerning their financial dispute, he did not find the money to be a credible motive to enlist a child to fabricate such serious allegations.

■ The ALJ concluded that substantial evidence existed to support the indicated report of child sexual abuse and recommended that D.T.'s appeal be denied. On January 7, 2004, the Bureau of Hearings and Appeals adopted the recommendation of the ALJ. On July 16, 2004, the Department of Welfare upheld the decision of the Bureau of Hearings and Appeals. This appeal followed.[2]

■ Initially, we address D.T.'s argument that DPW erred in failing to expunge the indicated report of child abuse because it was not based on substantial evidence. On appeal of a refusal to expunge an indicated report, the county agency bears the

2. Our review is limited to determining whether the necessary findings are supported by substantial evidence, whether an error of law was committed or whether constitutional rights have been violated. *B.E. v. Department of Public Welfare*, 654 A.2d 290 (Pa.Cmwlth. 1995).

burden of proving that the actions of the perpetrator constitute child abuse within the meaning of the statute. *L.S. v. Department of Public Welfare*, 828 A.2d 480 (Pa.Cmwlth.2003). Substantial evidence is evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion. *Id.* Substantial evidence needed to maintain an indicated report of child abuse is "evidence which so preponderates in favor of a conclusion that it outweighs, in the mind of the fact-finder, any inconsistent evidence and reasonable inferences drawn therefrom." *R.P. v. Department of Public Welfare*, 820 A.2d 882, 885 (Pa.Cmwlth.2003). The Bureau of Hearings and Appeals is the ultimate fact finder. *R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994).

D.T. contends that that this case basically boils down to a he said she said scenario. The testimony of K.W., his mother and Mr. Wilson against that of D.T. and her other clients. D.T. contends that the testimony of K.W. was unreliable and points out that he has stolen in the past and he also admitted seeing pornographic tapes at his own home. D.T. surmises that it's possible that when K.W. testified about watching a pornographic movie with D.T. he could have actually been referring to a pornographic movie he saw at his house. In addition, D.T. had previously been caught in her bedroom looking at the cover of a pornographic tape. D.T. also points out that no other families whose children she watched ever complained of any type of abuse and maintains that the allegations of sexual abuse occurred only after D.T. had gone to K.W.'s mother's home seeking payment for past services.

DHS responds that D.T. is attacking the credibility of the witnesses and that credibility determinations are resolved by the fact finder and cannot be disturbed on appeal. *Winston v. Department of Public Welfare*, 675 A.2d 372 (Pa.Cmwlth.1996). Here, the ALJ credited the testimony of K.W. finding it consistent and credible and found the testimony of D.T. was not credible. The Bureau of Hearings and Appeals adopted the ALJ's recommendation. Although D.T. might not agree with the credibility determinations, such was within the discretion of the fact finder, the Bureau of Hearings and Appeals.

As to the veracity of K.W., K.W. specifically testified that when he was sexually abused by D.T., it was at a time when D.T. told him to put a video into the VCR and that it was not a commercial that he was watching. K.W. stated he knew the difference between the truth and a lie and that he was certain of the events that happened with D.T. Moreover, although no other families had complaints with respect to the care provided by D.T., the ALJ found that other children had never spent the night at D.T.'s home and it was while K.W. spent the night that the abuse occurred.

■ Next, D.T. claims that DPW failed to sustain its burden of proving that D.T. was a child abuse perpetrator. The proper inquiry into whether an indicated report of child abuse should be expunged or maintained is whether the report is accurate. *L.S. v. Department of Public Welfare*, 828 A.2d 480 (Pa.Cmwlth.2003). Here, D.T. maintains that the complaint, investigation and adjudication contain inconsistencies which raise doubts as to the accuracy of the indicated report of the abuse against D.T. D.T. takes issue with the testimony of Mr. Wilson, the child abuse investigator, who was assigned this matter. D.T. complains that Mr. Wilson did not bring his case records to the hearing and Wilson did not personally interview K.W. Moreover, although Mr. Wilson knew there was a financial dispute be-

tween D.T. and K.W.'s mother, he did not investigate the issue.

DHS responds that the definition of child abuse includes "sexual abuse or sexual exploitation of a child under 18 years of age." 23 Pa.C.S. § 6303(b)(ii). Sexual abuse or exploitation is defined as "[t]he employment, use, persuasion, enticement or coercion of any child to engage in or assist any other person to engage in sexually explicit conduct or . . . rape, sexual assault, involuntary deviate sexual intercourse, aggravated indecent assault, involuntary deviate sexual intercourse." 23 Pa. C.S. § 6303(a).

The indicated report in this case stated that D.T. committed sexual abuse, specifically sexual assault by contact/exposure, as a result of D.T. making K.W. watch a pornographic movie, applying lotion to K.W.'s penis, and making him insert a vibrator into her vagina. The testimony of K.W., his mother and Mr. Wilson, whose testimony was credited, support the indicated report of child sexual abuse.

Although Mr. Wilson did not conduct the interview of K.W., he explained that he observed the interview conducted by a trained forensic interviewer at the Philadelphia Children's Alliance. Wilson stated that Philadelphia Children's Alliance is an agency utilized by DHS to minimize the number of interviews a child must endure surrounding allegations of child abuse. Mr. Wilson personally heard K.W. state that D.T. made him watch a tape, while D.T. put lotion on his penis. Mr. Wilson also heard K.W. state that D.T. made him

get the rubber penis out of the drawer and then inset it into D.T.'s private part.

Mr. Wilson knew of the financial dispute between D.T. and K.W.'s mother. According to Mr. Wilson and the ALJ, the financial dispute would not be a credible motive for K.W.'s mother to enlist him to fabricate such serious and detailed allegations.

DHS emphasizes that D.T. is again merely challenging credibility determinations. Here, in addition to finding the testimony of K.W.'s mother, and Mr. Wilson credible, the ALJ, whose determination was adopted by the Bureau of Hearings and Appeals, found the testimony of K.W. credible and this court has previously held the testimony of the victim alone constitutes substantial evidence to support an indicated report of child abuse. *G.S. v. Department of Public Welfare*, 104 Pa. Cmwlth. 84, 521 A.2d 87 (1987). Here, given that the Bureau of Hearings and Appeals credited the testimony of K.W., his mother and Mr. Wilson, and that the Bureau of Hearings and Appeals is the ultimate fact finder, having been designated as such by the Secretary of the Department of Public Welfare, *R.*, 535 Pa. at 446, 636 A.2d at 145, we conclude that, based on their testimony, substantial evidence exists to maintain an indicated report of child abuse.[3]

In accordance with the above, the decision of the Department of Public Welfare is affirmed.

## *O R D E R*

Now, May 4, 2005, the decision of the Department of Public Welfare, Bureau of

---

**3.** The legislature, pursuant to 23 Pa.C.S. § 6341, conferred the power to find facts and render decision as follows:

(c) Review of refusals of request.If the secretary refuses the request [to amend, seal or expunge a report] or does not act within a reasonable time, but in no event later than 30 days after receipt of the re-

quest, the perpetrator . . . shall have the right to a hearing before the secretary or a designated agent of the secretary. . . .

. . . .

(e) Order.—The secretary or designated agent may make any appropriate order respecting the expunction of such records. . . .

Hearings and Appeals, in the above-captioned matter, is affirmed.