# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

S.W., : 
          Petitioner : 
: 
      v. : No. 1422 C.D. 2017
: SUBMITTED: May 11, 2018
Department of Human Services, : 
          Respondent : **CASE SEALED**


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                  **FILED: July 19, 2018**


S.W. (Father) petitions *pro se* for review of an order of the Secretary of Human Services, of the Department of Human Services (Department) upholding the decision of the Bureau of Hearings and Appeals to deny his appeal and request to expunge the indicated report of mental child abuse against him. Following a remand pursuant to *S.W. v. Department of Human Services*, (Pa. Cmwlth., No. 162 C.D. 2016, filed March 20, 2017) (*S.W. I*), we affirm.

M.W. (Child) was born in 2004. During the relevant time periods, his parents (Father and Mother) were separated and experiencing acrimonious separation and custody issues. Having already been diagnosed with ADHD, Child began treating with a licensed child psychiatrist in April 2014 due to focusing issues. The psychiatrist diagnosed Child with acute adjustment disorder with anxiety, which

occurs when stress produces anxiety that impairs functioning. (August 16, 2017, Adjudication, Finding of Fact (F.F.) Nos. 1, 3, 6 and 8.)

In October 2014, the psychiatrist found that Child suffered from tics, including excessive sneezing and blinking, and increased anxiety. (*Id*., No. 9.) In December 2014, Child presented at her office with increased anxiety and tics, including constant coughing and repetitive blinking. (*Id*., No. 12.) The psychiatrist opined that Child's escalating anxiety was due to Father forcing him to call (1) the Franklin County Children and Youth Services (CYS) to state that Mother attempted suicide; and (2) the police and falsely state that his stepbrother had purposefully bruised him. The psychiatrist also testified that Child did not want to leave Mother's side and was afraid of being at school because he feared Father taking him away from Mother or hurting her in Child's absence. (*S.W. I*, slip op. at 5.)

By March 2015, Child was missing multiple days of school each week due to disruptive coughing. That month, he was hospitalized on two separate occasions due to severe anxiety. (F.F. Nos. 13 and 14.) On March 25th, CYS received and investigated a report of alleged child abuse regarding Child. (*Id*., Nos. 23 and 24.) Around the end of that month, Child no longer had visitation with Father. Shortly thereafter, opining that Child's main stressor was his relationship with Father, the psychiatrist reported that Child showed a dramatic decrease in anxiety levels. (*Id*., Nos. 16-18.) She stated that he was going to school every day and staying in class, that he was sleeping well, and that he had no tics. (*S.W. I*., slip op. at 6.) In addition, she noted that, for the first time, Child was angry with Father and neither wanted to see him nor speak with him on the phone. (*Id.*)

In June 2015, the psychiatrist diagnosed Child with Asperger's. In July 2015, she opined that he was not anxious, had no tics, made no complaints regarding

his medications, and was sleeping well. (*S.W. I*, slip op. at 7.) Although she acknowledged on cross-examination that he had changed schools at some point, she nonetheless reiterated that Child's main stressor was his relationship with Father. In support, she cited Child's complaints and the dramatic decrease in his anxiety since the discontinuation of visitation with Father. (*Id.*) Subsequently, once CYS determined that there was substantial evidence of child abuse, it filed an April 2015 indicated report of abuse listing Father as perpetrator. Father appealed. (F.F. Nos. 25 and 26.)

At the hearing that followed, neither Father nor Mother testified. Father via counsel presented the testimony of his sister, brother, and brother-in-law. CYS proffered the testimony of Child, the psychiatrist, and the CYS investigator. It also presented the psychiatrist's report detailing Child's diagnosis, therapy, treatment, and familial interactions. The Administrative Law Judge (ALJ) accepted the testimony of all of the witnesses as credible. In addition, he admitted the report in part and excluded it in part, stating that he would give whatever weight he deemed necessary to the admissible portions and not consider the rest. (*S.W. I*, slip op. at 17.) Ultimately concluding that Father had committed mental child abuse, the ALJ cited Father's (1) degrading of Mother in front of Child; (2) questioning of Child about Mother; (3) threats to take Child away from Mother; and (4) intentional withholding of prescribed medications. (*Id.* at 16.) In January 2016, the Bureau adopted the ALJ's recommendation in its entirety.

In March 2017, this Court in *S.W. I* concluded that there were two bases for the child abuse determination: (1) Father's failure to give Child his medications; and (2) Father's relationship with Child. Concluding that the record did not support a determination that the first basis was actionable, we turned to the second. (*S.W. I*,

3

slip op. at 22.) Reciting that Child credibly testified that Father's behavior bothered him, we also noted the psychiatrist's observation that Child's anxiety decreased dramatically after the termination of visitation. We further noted, however, that the record contained conflicting evidence that Father alleged outweighed any evidence supporting a finding that he substantially contributed to Child's serious mental injury. This conflicting evidence included Child's congenital disorders and Mother and Maternal Grandmother allegedly filling Child's head with misinformation about Father and causing Child to fear for Mother's loneliness when Child was with Father. In addition, Father alleged that the factfinder had ignored the fact that Child's issues were greatly improved by a change in school and an Asperger's diagnosis that resulted in a positive medication change. (*Id*. at 17-18.) Accordingly, citing the ALJ's failure to address such evidence, we remanded for specific findings regarding: (1) the admissibility of the psychiatrist's report due to the ALJ's lack of clarity in determining which portions were admissible; and (2) the weight given to conflicting evidence suggesting other causes for Child's serious mental injury. (*Id*. at 23.)

Subsequently, the ALJ issued an August 2017 recommended adjudication combining his original decision with the new findings made on remand. Once again, the Bureau adopted the ALJ's recommendation in its entirety. Father's petition for review followed. On appeal, we consider whether the Secretary erred in concluding that the Department met its burden of establishing by substantial evidence that Father intentionally, knowingly or recklessly caused or substantially contributed to serious mental injury to Child.

Section 6303 of the Child Protective Services Law (CPSL) defines "substantial evidence" as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23

4

Pa. C.S. § 6303. It is the equivalent of the preponderance of the evidence standard. *S.T. v. Dep't of Pub. Welfare*, 681 A.2d 853, 857 n.4 (Pa. Cmwlth. 1996). This substantial evidence/preponderance of the evidence standard means that the factfinder must be satisfied that the evidence shows that a fact is probably true, *i.e.*, more likely true than not. *In re S.H.*, 96 A.3d 448, 455 n.7 (Pa. Cmwlth. 2014). In addition, the Secretary is the ultimate finder of fact in expunction appeals. *K.J. v. Dep't of Pub. Welfare*, 767 A.2d 609, 613 (Pa. Cmwlth. 2001). Consequently, absent an abuse of discretion, we will not disturb his credibility determinations and the weight that he accorded to the evidence. *D.T. v. Dep't of Pub. Welfare*, 873 A.2d 850, 853 (Pa. Cmwlth. 2005). Further, in ascertaining whether the fact-findings are supported by substantial evidence, we must review the evidence and the inferences reasonably drawn therefrom in the light most favorable to the party who prevailed below. *W. Ctr., Dep't of Pub. Welfare v. Hoon*, 598 A.2d 1042, 1045 (Pa. Cmwlth. 1991).

Section 6303(b.1)(3) of the CPSL provides, in pertinent part, that the term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following: "Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act." 23 Pa. C.S. § 6303(b.1)(3). "Serious mental injury" is defined as follows:

> A psychological condition, as diagnosed by a physician or licensed psychologist, including the refusal of appropriate treatment, that:
>
> (i) renders a child chronically and severely anxious, agitated, depressed, socially withdrawn, psychotic or in reasonable fear that the child's life or safety is threatened; or
>
> (ii) seriously interferes with the child's ability to accomplish age-appropriate developmental or social tasks.

5

Section 6303(a) of the CPSL.

In the present case, Father argues that the Secretary should have determined that Child's serious mental injury resulted from the other potential causes described in the aforementioned conflicting evidence. To that end, he alleges that the factfinder improperly evaluated and/or failed to accord proper weight to that evidence. In addition, Father contends that Child's "cocktail of medications" had a definite impact on his wellbeing such that Father was not the source of a serious mental injury. In support, Father has attached an addendum to his brief depicting purported side effects to certain medications. Father's contentions are without merit.

On remand, the factfinder considered and disregarded other alleged causes of Child's serious mental injury. In concluding that there was substantial evidence that Father's actions substantially contributed to a serious mental injury to Child, the Secretary reasoned:

> First of all, . . . the "conflicting evidence" . . . is minimal at best and in many cases does not exist. [Child's] Asperger's diagnosis had no effect on [his] injury. [Child's] anxiety levels began to lower in March of 2015, when he stopped seeing [Father]. [Child] was diagnosed with Asperger's at the end of June, 2015. [Child's] anxiety levels were still low throughout that time period, and continued to be low after said diagnosis. (N.T. 55-57) There was very limited questioning regarding [Child's] change of schools, and no pertinent analysis on the effect of the school change (positive or negative). [Child] testified that [Mother] did not tell him what to say, nor did she suggest how bruises may have been received. (N.T. 122-123, 128-129)
>
> As stated previously, there are other factors that have some effect on [Child's] mental health. The contentious relationship between his parents, until resolved, will always be a stressor in [his] life. However, *what is abundantly clear in the hearing record, and*

> *acknowledged by Commonwealth Court, is that [Child] suffered anxiety related to visitation with [Father]. The two most important witnesses at hearing, [Child] and the psychiatrist are unequivocal that [Father's] words and actions toward [Child] are the main factor regarding his mental injury. Even [Father's] sister testified that [Father] spoke in derogatory terms about [Mother], and that some of those times were in front of [Child]. (N.T. 170-171) Additionally, when the stressor (visitation with [Father]) was removed from [Child's] life, [his] mental condition improved greatly.*

> Looking at the totality of the hearing record, . . . [Father] clearly acted recklessly in degrading [Mother], constantly asking questions about what was going on in her household, and threatening to take [Child] away from her.

(August 16, 2017, Adjudication at 13) (emphasis added).

Moreover, Father's assertion regarding the side effects of certain medications is tantamount to a post-hearing attempt to present extra-record evidence. A court may not accept appendices attached to a petitioner's brief that are *dehors* the record. *Rossi v. Unemployment Comp. Bd. of Review*, 675 A.2d 390, 392 (Pa. Cmwlth. 1996).

By way of further analysis, we conclude that Father is improperly urging this Court to reweigh the evidence and to accept his version of the facts. Mindful that the Secretary accepted the testimony of both the psychiatrist and Child as credible and afforded it substantial evidentiary weight, we turn first to the evidence pertaining to the psychiatrist. The factfinder noted that she testified to the totality of Father's actions in causing mental injury to Child, including: frequently calling Mother unseemly names despite Child asking Father to stop; making Child lie to CYS about accidental bruises received while in Mother's care; and telling Child that he would hurt Mother. As the Secretary stated regarding the importance

7

of considering the totality of circumstances surrounding the subject child in mental abuse cases and analyzing what or who has impacted a mental injury: "In most cases regarding mental abuse, causation does not involve a single event, but a pattern of behaviors over time that lead to any injury or an exacerbation of an injury." (August 16, 2017, Adjudication at 11.) In that regard, the psychiatrist consistently opined over the course of treatment that Child's relationship with Father was Child's main stressor and the source of his anxiety.

In addition, in response to this Court's directive in *S.W. I*, the Secretary carefully analyzed each segment of the psychiatrist's report. In so doing, he stated: "It is important to note that I gave less weight to the admissible portions of this report than was given to the credible testimony of [Child] and [the psychiatrist]." (August 16, 2017, Adjudication at 8.) In any event, below is a summary of those segments of the report that the Secretary deemed admissible:

> Paragraph One: Introductory information that but for diagnosis information carries no weight;
>
> Paragraph Two: Admissible statements pertain to Father calling Child every night and asking him many questions regarding Mother and Father calling Child nicknames;
>
> Paragraph Three: Admissible *in toto* in that it pertained to the psychiatrist's direct interactions with Father which she testified to without rebuttal;
>
> Paragraph Four: Admissible statements include the fact that Child felt relieved when he did not have to spend weekends with Father and that Father told him to spit out his medication;
>
> Paragraph Five: Admissible statements include Father making Child call CYS to report Mother's suicide attempt, Child working with Father at BJ's at three a.m., and Father making Child lie to police regarding source of bruises;

8

> Paragraph Six: Admissible statement includes Child
> reporting that he was afraid that Father would hurt Mother
> while Child was at school.

(August 16, 2017, Adjudication at 8.) Also in accordance with our directive on remand, the Secretary explained why he determined that the rest of the report was inadmissible.[1] (*Id*. at 9.)

Finally, as noted, the Secretary accepted as credible and afforded weight to Child's testimony that some of Father's actions bothered him a great deal. (*Id*. at 11.) These actions included: degrading Child's mother to him; calling Mother unseemly names; asking Child questions about Mother including whom she was with, what she was feeding him, and who was in the room during phone conversations; and telling Child that Father was going to take him away from Mother. (July 30, 2015, Hearing, Notes of Testimony (N.T.) at 102-03, 112-15; Reproduced Record (R.R.) at 213-14, 223-26.) Regarding the latter, Child testified that Father would try anything to get him away from Mother, including bribing him with the promise of a dog and sometimes following them in Father's car. (*Id*. at 112; R.R. at 223.)

---

[1] In rejecting specified portions of the report, the factfinder observed that Child's statements made during therapy that were not part of his testimony presented a problem with admissibility. The factfinder reasoned:

> The problem is twofold. First, [the psychiatrist] testified that she did not keep record of sessions when she spoke to [Child] alone versus speaking to [him] and [Mother] together in therapy. (N.T. 76) Without this delineation, it is impossible to determine whether the information provided was done so by [Child] or [Mother]. As neither party called [Mother] as a witness, this information is inadmissible hearsay. Second, without similar direct testimony from [Child], these statements are double hearsay. As such, said statements are inadmissible.

(August 16, 2017, Adjudication at 8) (footnote omitted).

Moreover, Child also testified regarding a panic attack brought on by the idea of seeing Father at a school function and feeling unsafe in Father's home. (*Id.* at 97-99; R.R. at 208-10.) Specifically regarding school, Child testified as follows:

> Well, I did feel anxious, like, scared a bunch of times, because – well, first, the time I can remember was because I didn't want to go to my school concert because I was afraid he would be there. . . . I don't like whenever I'm around him. I think it was because of the fist mark. And so I was, like – I was coughing a lot and really scared. I couldn't even focus on math.

(*Id.* at 99; R.R. at 210.)

It is well settled that the factfinder may base his determination that an indicated report is accurate on the consistent testimony of a child abuse victim. *G.V. v. Dep't of Pub. Welfare*, 52 A.3d 434, 439 (Pa. Cmwlth. 2012); *D.T.*, 873 A.2d at 854. Here, Child's testimony, combined with the other credible evidence of record, constituted substantial evidence that Father substantially contributed to Child's serious mental injury and that such injury rendered Child severely anxious and interfered with his ability to accomplish age-appropriate developmental or social tasks under the CPSL.

Accordingly, we affirm.

                                       _____

                                       **BONNIE BRIGANCE LEADBETTER,**
                                       Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

S.W.,                                          :
                        Petitioner             :
                                               :
            v.                                 :    No. 1422 C.D. 2017
                                               :
Department of Human Services,                  :
                        Respondent             :    **CASE SEALED**

# **O R D E R**

AND NOW, this 19th day of July, 2018, the final order of the Secretary of Human Services, of the Department of Human Services is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge