# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J. B.,                                       :
          Petitioner                   :
                                       :
          v.                           :  No. 627 C.D. 2024
                                       :  SUBMITTED:  June 3, 2025
Department of Human Services,                 :
          Respondent                   :  **CASE SEALED**

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED:  July 10, 2025**

Petitioner, J.B., petitions for review of the final order of the Secretary of Human Services upholding the decision of the Department of Human Services (DHS), Bureau of Hearings and Appeals (Bureau) to deny his (1) appeal from the decision of the Philadelphia DHS to file an "indicated report" of child abuse against him pursuant to the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301-6386; and (2) request to expunge the indicated ChildLine and Abuse Registry report naming him as a perpetrator of child abuse against Ja.B. (Child).[1]  The Bureau adopted in its entirety the recommendation of the Administrative Law Judge (ALJ),

---

[1] ChildLine, a unit within DHS, operates a statewide toll-free system for receiving reports of suspected child abuse; refers the reports for investigation; and maintains the reports in the appropriate file.  55 Pa. Code § 3490.4(iii).

who concluded that Philadelphia DHS provided substantial evidence that Petitioner committed sexual abuse and indecent assault of Child. We affirm.

The pertinent background of this matter is as follows.[2] Child was between the ages of 9 and 12 at the time of the alleged abuse by Petitioner, Mother's ex paramour. On Mother's Day in 2022, Petitioner drove Child to the mall to look for a gift for Mother. While in the car, Petitioner initiated a game where he would ask Child to close her eyes while he hid her wallet. After he placed the wallet near her pelvic region, he reached for her pants, unbuttoned them, forced his hand under her underwear, and placed his fingers on her vagina. Child testified that he rubbed her vagina but she did not believe that he put his fingers inside of her body. Child expressed feeling pain when he forced his hand in her pants, tried pulling his hand out of her pants, and asked him to stop multiple times. He told her to "relax, it's okay" and eventually stopped when she started crying. 7/31/2023 Hr'g, Notes of Testimony (N.T.) at 19; Reproduced Record (R.R.) at 99a. Afterwards, Petitioner offered her Visa gift cards and asked her not to tell Mother. If Mother asked, he advised Child to "just say that we had fun." *Id.*

Several months later, another incident occurred at Child's home while Mother was at work. Having recently awakened, Child was sitting on her couch wearing a shirt and shorts when Petitioner pulled up her shirt and exposed her breasts. After Child changed her night clothes, Petitioner drove her to get food. During the ride, Child texted her friend about the incident. Petitioner saw the text reflected in the car window, told Child that he could get in trouble if she did not delete it, took her phone, deleted the message, and returned the phone to her.

---

[2] Unless otherwise stated, the facts are taken from the ALJ's findings of fact in the adjudication issued February 12, 2024. *See* Certified Record (C.R.) at 58-72 and Petitioner's Br., App. C.

In addition to the aforementioned incidents, Child testified that Petitioner would take her shopping and have her try on the clothes in the car during which she had to take off her pants or skirt in front of him. She also described wrestling with him at which time he would put her in positions that made her feel uncomfortable. Finally, she described a time when he washed her hair at the kitchen sink and his "stomach, knee and private area was pressing against [her] while [he] repositioned his body multiple times to rinse different portions of [her] head." 2/12/2024 Adjudication, Finding of Fact (F.F.) F.F. No. 31.

Once Child told her cousins about the incidents, word got back to Mother. When Mother confronted Petitioner, Child spoke up and asserted that she was telling the truth. Child described Mother as sad and opined that she seemed conflicted between wanting to trust Petitioner and wanting to believe Child. After the argument, Child no longer saw Petitioner. N.T. at 36; R.R. at 114a.

During a group session with school counselor Amanda Kaur (School Counselor) at which Child was talking about her relationship with Mother, Child "had an explosive emotional moment when she revealed the abuse." F.F. No. 37. Child was anxious, nervous, and crying but felt relieved to be able to talk to someone. After School Counselor removed the other students, Child disclosed that Petitioner touched her inappropriately in the car, that he lifted her shirt, that he took her phone, and that he offered her gift cards. Child revealed that Mother had a history of not believing her and that she did not feel comfortable sharing the abuse with Mother. When School Counselor spoke with Child a second time, her story was consistent.

3

In November 2022, Philadelphia DHS received a report with allegations that Petitioner had sexually abused Child. Vernetta Cantey (Investigator) was assigned to investigate those allegations.

In December 2022, an interviewer from the Philadelphia Children's Alliance conducted a forensic interview at which Child revealed Petitioner as the perpetrator of sexual abuse. Child "disclosed that [he] placed his hand under her underwear and rubbed her vagina, lifted her shirt, made [her] try on clothes in the car, made [her] feel uncomfortable while washing her hair at the kitchen sink and while wrestling." F.F. No. 45.

In January 2023, Investigator filed an indicated report listing Petitioner as the perpetrator of sexual abuse of Child between January 2020 and May 2022. Investigator relied on her in-person interview of Child, observations during the forensic interview, and interview of Mother. The abuse subcategories were "causing sexual abuse or exploitation of a child through any act/failure to act" and "actual/simulated sexual activity for the purpose of sexual stimulation." Child Protective Services Investigation Report (CY-48), Ex. C-7; R.R. at 46a-48a.

In February 2023, Philadelphia DHS notified Petitioner that he was listed as a perpetrator of child abuse in the ChildLine Registry. In March 2023, Petitioner appealed requesting that his name be expunged. The ALJ conducted an administrative hearing in July 2023. Petitioner was represented by counsel but did not testify or present any witnesses or exhibits. The ALJ credited the testimony of Philadelphia DHS's witnesses and Child. The ALJ concluded that Philadelphia DHS met its burden by substantial evidence that the incidents in the car and on the couch constituted sexual abuse and indecent assault. However, the ALJ determined that Philadelphia DHS did not meet its burden with respect to the instances of Petitioner

4

washing Child's hair and wrestling with her. Nonetheless, the ALJ reiterated that Child testified credibly and that the wrestling incidents in particular were questionable and fit Petitioner's pattern of manipulating seemingly innocent activities into sexually questionable events. 2/12/2024 Adjudication at 16.

In February 2024, the Bureau issued an adjudication adopting the ALJ's recommendation. Following reconsideration, the Secretary upheld the Bureau's order in April 2024. Petitioner's appeal to this Court followed.

In order to maintain the indicated report, Philadelphia DHS had to present substantial evidence. Section 6341 of the CPSL, 23 Pa.C.S. § 6341. Substantial evidence is defined as "evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." Section 6303(a) of the CPSL, 23 Pa.C.S. § 6303(a). "In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder [and] draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998) (citations omitted). DHS "is the ultimate fact[]finder in expunction appeals" and responsible for credibility determinations. *F.V.C. v. Dep't of Pub. Welfare*, 987 A.2d 223, 228 (Pa. Cmwlth. 2010). "Absent an abuse of discretion, we will not disturb [its] determinations as to credibility and evidentiary weight." *R.J.W. v. Dep't of Hum. Servs.*, 139 A.3d 270, 285 (Pa. Cmwlth. 2016) (citation omitted).

Moreover, hearsay testimony admitted without objection at administrative proceedings cannot be used to support any findings unless it is corroborated by competent evidence otherwise found in the record. *D.J.P. v. Dep't*

5

*of Pub. Welfare*, 545 A.2d 496, 498 (Pa. Cmwlth. 1988) (citation omitted). Consequently, "[h]earsay testimony in an administrative proceeding to expunge a [child abuse report] is not substantial evidence unless it is corroborated." *Bucks Cnty. Child. & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare*, 808 A.2d 990, 993 (Pa. Cmwlth. 2002). Such testimony must be corroborated with a sufficient degree of reliability in order to constitute substantial evidence. *L.S. v. Dep't of Pub. Welfare*, 828 A.2d 480, 483 (Pa. Cmwlth. 2003) (citation omitted).

Petitioner first argues that the adjudication was not supported by substantial evidence, alleging that Child's testimony lacked specificity as to date, time, and place of the alleged incidents. In addition, he asserts that Child's testimony was inconsistent as to the alleged nude photos of herself found on her phone, her text messages, and punishment by Mother.

Petitioner's substantial evidence argument is without merit. Petitioner attacks the weight that the ALJ afforded Child's testimony, with the underlying assumption that her testimony could not have been credible absent greater specificity. However, the ALJ painstakingly recited and reviewed Child's testimony in determining that Petitioner was the perpetrator. In so doing, the ALJ noted that even though Child was of tender years during the period of the alleged events, she "was consistent in the details of the allegations and that consistency was maintained through the first disclosure with the counselor at school, the forensic video[,] and the testimony at the hearing." 2/12/2024 Adjudication at 15.

Moreover, the ALJ remarked on "the candor of [Child] even when asked about behaviors that were unflattering or possib[ly] against her interest." *Id.* at 16. Specifically, Child acknowledged that she contacted Petitioner multiple times on her cell phone after the initial incidents of alleged abuse and asked to go

6

shopping.[3] In addition, she admitted that she was in trouble with Mother for sharing inappropriate pictures of herself with boys. F.F. Nos. 28 and 29. As Philadelphia DHS asserts, however, "[t]he testimony regarding the nude photos is immaterial as to whether child abuse occurred, and [Philadelphia DHS] properly objected to Petitioner's cross-examination involving the content of the text messages when [he] failed to produce the texts for purposes of cross-examination." Philadelphia DHS's Br. at 10 n.2. At all ends, these factors were for the ALJ to weigh in assessing Child's credibility and rendering the adjudication. This Court has repeatedly held that the victim's testimony alone can constitute substantial evidence to support an indicated report of child abuse. *D.T. v. Dep't of Pub. Welfare*, 873 A.2d 850, 854 (Pa. Cmwlth. 2005) (citation omitted).

Petitioner next argues that he was denied a fair and accurate hearing because the ALJ allowed the testimony of School Counselor and the manager of forensic services for the Philadelphia Children's Alliance (Manager) to testify as to what Child said in her interviews. He alleges that such testimony constituted hearsay, which he was unable to challenge through cross-examination. In addition, he asserts that Child's "answers were in responses [sic] to specific questions posed by biased interviewers who are trained so as to elicit certain responses." Petitioner's Br. at 19.

---

[3] Child testified as follows as to why she continued to contact Petitioner after the abuse:

> Q. [Philadelphia DHS attorney] Okay. And so, why did you feel comfortable getting in the car with him then in June, July, after the incident that occurred months prior with rubbing your vagina?
>
> A. Because he just said that we were just having fun and I didn't know how to really react to it at that moment.

N.T. at 26-27; R.R. at 104a-05a.

Petitioner's hearsay argument is without merit. Counsel for Petitioner did not raise hearsay objections at the hearing and conducted ample cross-examination of Child, Manager, and School Counselor. In addition, the testimony of Manager and School Counselor as to what Child previously said was corroborated by Child's testimony at the hearing. As noted, a victim's testimony in and of itself can constitute substantial evidence to support an indicated report of child abuse. *D.T.*, 873 A.2d at 854. Moreover, counsel for Petitioner did not object to the admission of the forensic interview report (Exhibit C-1) and noted that he had a copy. N.T. at 95; R.R. at 177a. School Counselor did not record her interviews with Child. N.T. at 75; R.R. at 153a.

Petitioner's bias argument also lacks merit. There was ample opportunity at the hearing for counsel for Petitioner to attempt to discredit the witnesses. Notably, counsel stipulated that Manager could be qualified as an expert in the forensic interviews of children. N.T. at 93; R.R. at 175a. As for School Counselor, counsel cross-examined her as to her background and training. N.T. at 72-74; R.R. at 150a-52a. In addition, School Counselor testified that she did not ask Child leading questions, that she let Child communicate what was going on in Child's own words, and that there were no discrepancies in what Child told her. N.T. at 75-76; R.R. at 153a-54a. As noted, it was for the ALJ to determine credibility and evidentiary weight. *R.J.W.*, 139 A.3d at 285.

Accordingly, we affirm.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

8

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| J. B., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 627 C.D. 2024 |
| | : | |
| Department of Human Services, | : | |
| Respondent | : | **CASE SEALED** |

# **O R D E R**

AND NOW, this 10th day of July, 2025, the Adjudication of the Department of Human Services, Bureau of Hearings and Appeals, is AFFIRMED.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita